MARION DI SABATO, an Infant, by MARCO DI SABATO, Her Guardian ad Litem, et al., Appellants, v. ROBERT SOFFES et al., Respondents.

First Department, November 24, 1959.

298

*Louis Jay Brecher* for appellants.

*A. Harold Frost* of counsel (*Emile Z. Berman* with him on the brief; *Russell B. Greaves,* attorney), for respondents.

M. M. FRANK, J. In this action for personal injuries, the plaintiffs appeal from an order denying their motion, made pursuant to rule 113 of the Rules of Civil Practice, for summary

judgment striking out the defendants' answer and directing an assessment of damages.

At the outset it should be stated that there is no claim that the plaintiffs were contributorily negligent. Nor could there be such a claim on the facts in the case.

The plaintiffs were employed as counter girls in a drugstore which was located at the corner of two intersecting streets. At the time of the accident they were stationed between the counter and a glass and brick wall which formed the outer shell of the building.

It is not disputed that a 1957 Chrysler owned by the defendant, Soffes, and in charge of his brother-in-law, the defendant Grubetz, careened under its own power from a point diagonally across the street from the store and 50 or 60 feet distant therefrom, while Grubetz was out of the car and not at its wheel. The car travelled through the intersection with such speed and force that, after hitting a parking meter stanchion, it mounted the sidewalk and crashed into and partially through the outer wall of the store. It demolished a section of the wall and dislodged coffee urns and window cases. This equipment, in turn, felled the plaintiffs, who were rendered unconscious and removed to the hospital in that condition.

We are enjoined by the rule to grant the motion, "if, upon all the papers and proof submitted, the action or claim  *  *  * shall be established sufficiently to warrant the court as a matter of law in directing judgment, interlocutory or final".

The recent amendment to rule 113 extended it to include actions grounded in negligence. However, the change was not intended to vary the basic principles which have evolved since the inception of the Rules of Civil Practice in 1921.

One of the recognized purposes of summary judgment is to expedite the disposition of civil cases where no issue of material fact is presented to justify a trial. While the courts are cautioned to exercise the power to summarily direct judgment with full recognition that a party with a just claim or a valid defense is entitled to his day in court, timidity in exercising the power in favor of a legitimate claim and against an unmerited one, not alone defeats the ends of justice in a specific case, but contributes to calendar congestion which, in turn, denies to other suitors their rights to prompt determination of their litigation.*

---

* See Summary Judgment in New York, St. John's Law Review, (Vol. 33, p. 414); Prashker, New York Practice (4th ed., 1959, § 260); Shientag, Summary Judgment (1941, ch. 2); *Dwan* v. *Massarene* (199 App. Div. 872) compared with motion to strike defenses as in *People* v. *McCumber* (18 N. Y. 315, 325).

On a motion such as this, the court is called upon to determine whether a bona fide issue exists. If the plaintiff's pleadings and other papers disclose no real defense and if the defendant fails to controvert such proof and establish by affidavits or other evidence the existence of a genuine defense, the court may find that no triable issue exists and grant summary judgment (*General Investment Co.* v. *Interborough R. T. Co.,* 235 N. Y. 133, 142–143).

In the first case to reach this court after the adoption of the rule (*Dwan* v. *Massarene,* 199 App. Div. 872, 880*), it was said, " The defendant must show that he has a *bona fide* defense to the action, one which he may be able to establish. It must be a plausible ground of defense, something fairly arguable and of a substantial character. This he must show by affidavits or other proof. He cannot shelter himself behind general or specific denials   *   *   *. He must show that his denial or his defense is not false and sham, but interposed in good faith and not for delay."

In the intervening years, the decisions have not varied these prime rules. The inquiry must be directed to ascertain whether the defense is genuine or unsubstantiated. " A shadowy semblance of an issue " is not enough (*Hanrog Dist. Corp.* v. *Hanioti,* 10 Misc 2d 659, 660, Shientag, J.). Only recently, in affirming this court, the Court of Appeals reiterated that, " If the issue claimed to exist is not ' genuine, but feigned, and   *   *   *   there is in truth nothing to be tried ' summary judgment is properly granted ". (*Rubin* v. *Irving Trust Co.,* 305 N. Y. 288, 306.) It is incumbent on the court, therefore, to search the proof, if any, as proffered by affidavits or otherwise, to ascertain whether it discloses a real issue, rather than a formal, perfunctory, or shadowy one. If, as here, the question is solely one of the defendants' liability, is there a sufficient factual demonstration to substantiate the purely formal denial of liability in the pleading to warrant a conclusion that it is genuine enough to create an issue rather than the semblance of one?

With these principles in mind, we turn to the case at hand. The defendants have failed to submit a single affidavit, by anyone having knowledge of the facts, to controvert the prima facie showing of negligence which flows from the occurrence

---

* Mr. Justice Page, who wrote the opinion in *Dwan* v. *Massarene* for this court, was chairman of the convention which enacted the rules. The convention was created by the Legislature (L. 1920, ch. 902; L. 1921, ch. 370) for the purpose of formulating and adopting suitable rules of practice not inconsistent with the Judiciary Law and the Civil Practice Act.

together with the examination before trial. A defendant is not privileged on a motion for summary judgment to ignore the rule that he must submit proof of a defense, for there must be compliance with the requirements enunciated in *General Investment Co.* v. *Interborough R. T. Co.* and *Divan* v. *Massarene* both quoted hereinabove. (See, also, *Hanna* v. *Mitchell,* 202 App. Div. 504, 514; *Graymount* v. *Schlemmer,* 283 App. Div. 859; *Gnozzo* v. *Marine Trust Co.,* 258 App. Div. 298; *Hanrog Dist. Corp.* v. *Hanioti,* 10 Misc 2d 659, *supra*; Shientag, Summary Judgment, ch. 12.)

It is incumbent upon a defendant who opposes a motion for summary judgment to assemble, lay bare and reveal his proofs, in order to show that the matters set up in his answer are real and are capable of being established upon a trial. (*Dodwell & Co.* v. *Silverman,* 234 App. Div. 362.) An opposing affidavit by an attorney without personal knowledge of the facts has no probative value and should be disregarded (*Barnet* v. *Horwitz,* 278 App. Div. 700; *Cohen* v. *Pannia,* 7 A D 2d 886).

The plaintiffs rely upon the undisputed physical facts of the accident and the examination before trial of the defendant Grubetz. There is no question that Grubetz drove the car to the intersection hereinbefore described. The stated purpose for which it was brought to a stop was to permit Grubetz's mother, aged 63 or 64 to alight. In the car at the time was his four-year-old nephew, seated between him and his mother who occupied the right side of the front seat. Grubetz testified, and the defendants concede, that he left the motor running and the ignition key turned on when he quit the driver's seat. The car was equipped with an "automatic" gear shift controlled by a series of push buttons grouped on the left-hand side of the dashboard or instrument panel.

Grubetz stated that he set the emergency brake, pushed the "neutral" button, opened the left-front door, stepped to the street, walked around the rear of the car, and attempted to open the right-front door. However, for some reason completely unexplained by the defendants, it could not be opened. Grubetz then returned to the left side of the car, stood alongside the open door and directed his mother to leave the vehicle through that exit. His nephew jumped over the front seat into the rear space (no claim is made by the defendants that he dislodged any part of the operating mechanism) and the elderly woman started to move over to the left-front door for the purpose of alighting on that side.

As already indicated, the only affidavit submitted in opposition was made by the defendants' trial counsel who has no per-

sonal knowledge of the facts. That paper emphasizes the denials contained in the answer and then the affiant proceeds to argue, much as one does in a brief, from quoted portions of the examination before trial. In that fashion, the defendants contend that there is an issue of fact. To support their position, they rely upon Grubetz's assertion that he set the emergency brake and urge that the conduct of the mother was an intervening act for which the defendants are not responsible.

While Grubetz's assertion that he set the brake is stressed, if that is the fact, we are not told why the car moved. Instead, we are asked to infer that the brake was not defective even though the car travelled not haltingly and with power retarded, as one dles with a good brake unreleased, but with sufficient impetus to cause considerable property damage. Since there is no dispute that the car crossed the intersection under its own power, the inference that the defendants are absolved because Grubetz set the brake is unsupportable and creates no issue of fact. With every reasonable inference favorable to the defendants drawn from the facts, the only conclusions that follow are that he did not properly set the brake, or, if he did, that it was defective, or that his mother released it.

The defendants offer no proof to establish the condition of the brake or that the mother released it. Grubetz's description of the manner in which his mother proceeded to leave indicates that she did not slide across the seat as one might normally do, but attempted to move across the space by crossing her right leg over her left. As hereinafter developed, even if we assume that the brake was in good condition and properly set, the defendants are not relieved of liability, if the action of the mother caused the brake to be released.

Grubetz stated that he heard, not saw, her leg touch the gas pedal. He said, "I told her to get her foot off the gas pedal and she continued to cross over and as she leaned over, she was trying to get some leverage, her hand hit the buttons and she [sic, the car] then took off from diagonally across the street." However, when specifically asked whether he saw her reach out for the buttons, he answered, "No." He also testified that, "I didn't see her do anything which was wrong. The only thing that I assumed was as she proceeded * * *."

The defendants would have us draw an inference that the emergency brake was accidentally released by the elderly woman, and that she also pushed the button which shifted the gears into one of the speeds, consequently putting the car into motion. There is not a scintilla of proof to justify these inferences. Grubetz gave no such testimony but on the contrary said

he did not hear the brake disengage, although he was standing in the open doorway near it.

Therefore, if the witness predicated his testimony, by a process of inverse reasoning from result to cause, upon the assumption that, because the car took flight, his mother must have set it in motion by releasing the brake and shifting it into gear, such testimony would be inadmissible on a trial and on this motion has no probative value.

"Motor vehicles are dangerous machines; and even when skillfully and carefully operated, their use is attended by serious dangers to persons and property." (*Hess* v. *Pawloski*, 274 U. S. 352, 356; *Bessan* v. *Public Serv. Co-ordinated Transp.*, 135 Misc. 368, 370, per SHIENTAG, J.)

The negligence of Grubetz in its very inception stemmed from his failure to turn off the ignition key and thus immunize the motive power of the car. Even if we accept the version urged by the defendants and examine it in a light most favorable to them, no issue is presented. The record is clear that Grubetz added to his initial negligent act by directing his mother to leave the car while the motor was running. She proceeded in a manner likely to bring her into contact with the various devices which could and may well have put the vehicle in motion. This in and of itself, as a matter of law, is sufficient to hold the defendants responsible for what followed.

Added to these initial acts of negligence, the defendants are liable, as a matter of law, for Grubetz's failure to act after he heard the motor race when his mother came in contact with the gas pedal. If he observed his mother grasp the wheel for leverage, he did nothing about it. His omissions to act when a reasonably prudent person would foresee or should have foreseen dangerous consequences establish an irrefutable pattern of one act of omission piled on another, like Ossa on Pelion. We accept, as we should on this motion, Grubetz's statement that he attempted to re-enter the car after it started to speed through the intersection. However, it is of no avail as a defense. His negligence by that time was complete and his unsuccessful attempt to prevent damage or undo the harm does not exculpate the defendants.

To hold the defendants responsible, it was not necessary that Grubetz have notice of the particular manner in which the accident would occur (*Condran* v. *Park & Tilford*, 213 N. Y. 341, 345; *Robert* v. *United States Shipping Bd. Emergency Fleet Corp.*, 240 N. Y. 474, 477). Here the danger was or should have been foreseen and it defined the duty to be obeyed (see *Palsgraf* v. *Long Is. R. R. Co.*, 248 N. Y. 339).

This is not a case like *Maloney* v. *Kaplan* (233 N. Y. 426, Ann. 26 A. L. R. 909) where, according to the defendants' version, the car was left with "its brakes set, engine stopped, and front wheels turned toward the curb, so that it would not have moved except for the interference of some boys who released the brake, started the engine, and shifted the levers" (p. 429). In that case the court pointed out (pp. 429–430) that "The situation was not presented as an unusual one where the danger was apparent of interference * * *." The latter situation, excepted from the rule in *Maloney*, is precisely the one presented in this case. "[T]he danger was apparent of interference" with the operating devices by Grubetz's mother. When he heard the motor racing, he did nothing. He could have turned off the motor, he could have stopped the further awkward progress of his mother, who, in her clumsy movements in close proximity, to the operating devices of the vehicle, may have grabbed the wheel for leverage. Grubetz's failure to act was an omission which aggravated his initial negligence.

We cannot here apply the theory of an independent intervening cause sufficient to relieve the defendants of responsibility and no issue is presented in respect thereto. Whatever Grubetz's mother did, if anything, to cause the car to move was done under his eyes, in his immediate presence, and under such conditions that, in the exercise of reasonable care, he was in a position to stop at each stage of these progressive acts until the very last. At no time, however, did he choose to intervene and by one simple act out of several available prevent the accident. If the misconduct is such as to invite or induce the intervention of succeeding acts, the intervening cause will not serve as an excuse, and the subsequent mischief will be held to be the result of the original misconduct (*Atchison &c. Ry. Co.* v. *Calhoun*, 213 U. S. 1, 7).

We must hold, as a matter of law, that Grubetz's failure to turn off the motor when he alighted from the car was a proximate cause of the accident. One of the definitions of proximate cause is "an act or omission occurring or concurring with another, without which act or omission the injury would not have been inflicted (38 Am. Jur., Negligence, § 50, p. 695).

Restatement (Torts, Vol. 2, § 439) says, "If the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's innocent, tortious or criminal act is also a substantial factor in bringing about the harm does not protect the actor from liability."

Where the acts of the defendant give rise to a series of events culminating in injury to another, such acts are all held the proximate cause (*Matter of Guardian Cas. Co.*, 253 App. Div. 360). If the intervening cause is merely incidental, and was set in motion or made effective by the original act, the law may ignore it and fix responsibility upon the initial act in the chain of events. Moreover, the original wrongful act may be so continuous that the act of a third person culminating in an injury may be regarded as not independent but as a part of the initial wrong producing the injury (see 86 C. J. S., Torts, § 28, p. 943).

It is no defense that some act of another may have concurred to produce the result (*Foiles* v. *Marco*, 262 App. Div. 1024). If, in fact, Mrs. Grubetz was negligent, the failure of Grubetz to cause her to desist constituted concurring negligent acts of commission and omission sufficient to fix responsibility on the defendants (see *Hawkes* v. *Goll*, 256 App. Div. 940, affd. 281 N. Y. 808).

Although used in a different context in *Matter of Case* (214 N. Y. 199, 204) we may appropriately here paraphrase Judge CARDOZO's reference to MAULE's classic utterance that when we say no evidence, we do not mean there is literally none, but that there is none that ought reasonably satisfy a court that the issue posed actually exists.

From the foregoing analysis, we conclude that the defendants have failed to establish the existence of a triable issue as to their liability for the injuries suffered by the plaintiffs. The order denying the motion to strike the answer of the defendants and for an assessment of damages should be reversed on the law, with costs, and the motion granted.

BREITEL, J. (dissenting). The issue is whether plaintiffs are entitled to summary judgment in this negligence action. A driverless automobile under power rolled across the street, crashed a building, and caused injuries to the infant plaintiffs. The facts, as they are known on this record, were developed on the examination of the defendant driver in a deposition taken before trial at the behest of plaintiffs.

Defendant driver brought his automobile to a stop in order to let off his mother, a passenger. He put the vehicle into neutral, he says; set his parking brake, but did not turn off the ignition. He stepped out of the vehicle on the left side to assist his mother. He walked to the other side but the right-hand door did not open. His four-year-old nephew, who was also sitting in the front seat, climbed into the back; he and then the driver told the mother to get out on the left side

of the car. As she moved over, across the front seat, the driver heard the engine race and told her to get her foot off the gas. The mother continued to the left and, as she did, her hand hit the gear push buttons on the dashboard.

At first the automobile started to move slowly. The driver attempted to get in, but the vehicle picked up such momentum that he could not do so and was dragged across the intersection. The vehicle jumped the opposite curb, struck the building and thus caused the injuries to infant plaintiffs.

Defendant driver inferred, as anyone must, if he had told the truth, that the mother must have inadvertently stepped on the accelerator pedal. Because the police officer at the scene is quoted as having said the parking brake was not set after the accident, one could infer that the mother somehow disengaged the brake, or that the impact of the accident did so. Or one could, of course, infer that the driver never set the hand brake, although he testified he had.

These are the key facts of the accident. From these facts negligence may not be concluded as a matter of law, which is what is required, if summary judgment is to be granted.

Whether an automobile operator should turn off his engine when he leaves the driver's seat momentarily is a question of fact depending upon the circumstances, namely: type of engine; idling speed of engine; grade of street; condition and type of brakes; persons remaining in the vehicle; character, age, driving skill, and propensities of the persons remaining in the vehicle; the location of such persons in the vehicle; and the general character of the area in which the vehicle is standing.

Whether the driver in fact set his parking brake is a manifest and disputed question of fact.

The findings to be drawn from the vehicle setting into motion, despite the driver's testimony on deposition that he put the engine into neutral and set his parking brake, involve questions of fact from which contradictory inferences could undoubtedly be drawn by the fact-finders.

Whether this particular automobile could move, although the parking brake was set, is a question of fact.

Whether the parking brake in this automobile was constructed to have as effective a braking force as the main brakes is a question of fact.

Whether the policeman's quoted extrajudicial statement that the parking brake was found not set after the accident, uncritically accepted by the driver when testifying on deposition, is to be believed is a question of fact.

The inferences to be drawn from the policeman's quoted statement, if accepted as true, namely, whether the driver did not set his brake, or that the brake lever was sprung by the impact of the accident are questions of fact.

Whether the driver, as a careful operator, should have permitted his mother to move across the front seat, is a question of fact.

Whether the driver should have foreseen that the mother in moving across the front seat, might step on the accelerator pedal, or push the gear push buttons, is a compound question of fact.

Whether the mother not only pressed the accelerator pedal but continued to press on it, as if it were a brake, is a question of fact, on which the record is unenlightening. But whether she did so is not, at this stage of the case, determinative, for one of the prime questions in the case is whether the driver was bound to foresee what she would do and did. It is for that reason that the absence of an affidavit by the mother is of no consequence on this motion.

Whether the driver could have done anything more than he did to stop his mother's actions or the motion of the vehicle, once the accident had started, is a question of fact.

Yet, in order for plaintiffs to recover, as a matter of law without trial, on a motion for summary judgment, each one of these questions of fact must be viewed as questions answerable in law, and in law alone.

Much is made that no affidavit by either defendant was submitted. Of course, testimony by deposition, taken by plaintiffs is a higher order of proof than an affidavit. An affidavit, usually prepared by a lawyer, and signed by the affiant, is hardly the equivalent in value of a deposition by question and answer, especially when the questioning is done by the adverse attorney. So, the contention that defendants have supplied less than they should have, is difficult to understand. Indeed, plaintiffs annexed the deposition, and from it the issues of fact appear to be present. The trouble is that plaintiffs not only presented a prima facie case in their affidavits but at the same time presented the facts which establish the elements of a defense and require a jury determination.

The jury's function in a trial is not only to find as between contradicted facts, which are true, but also to find as between contradictory inferences, which are true. Indeed, even the drawing of reasonable inferences is exclusively the province of the fact finders. It is only inferences which *must* be drawn from

evidentiary facts that are the stuff of what is referred to as "matter of law."

On this record, ultimately, defendants may not be held liable on a motion for summary judgment unless it is held, as a matter of law, that when a driver gets out of an automobile, not for parking but for a momentary stop, without turning off the motor, he must have foreseen that another in moving across the front seat might inadvertently set the automobile in motion.* This —without regard to the other surrounding circumstances. But this involves no novel question.

In this elementary case in the field of negligence the applicable legal principles are well settled. The automobile is not regarded as a dangerous instrumentality in fixing standards of care in the law of negligence. As far back as 1922, when the automobile was just becoming common, the Court of Appeals of this State stated: "Motor vehicles are commonly left standing in the street without extraordinary precautions being taken to prevent interference with them. They are not regarded as dangerous instrumentalities, but the possibility of danger from careless handling is obvious. The duty of the driver of such a vehicle, when he leaves it unattended in the street, is to be careful to have it so secured that it will not start up except by the intervention of some external cause not to be anticipated or guarded against." (*Maloney* v. *Kaplan*, 233 N. Y. 426, 428.) Of course, in this case, the automobile was not unattended, but there was something almost as serious, if not as serious.

Since 1922 the rule has become even more entrenched (1 N. Y. Auto. Law [1957], § 386; 4 N. Y. Jur., Automobiles [1959], §§ 268, 331, 333; Ann. 16 A. L. R. 2d: Injury by Parked Motor Vehicle, 979, 981). New York Jurisprudence states succinctly: "The time has long since passed when an automobile could be considered such a dangerous instrumentality or nuisance in itself that negligence might be predicated upon the fact alone that it was left unattended" (*op. cit.*, p. 319). This court, in *Lazarowitz* v. *Levy* (194 App. Div. 400, 404), held that an automobile is not to be deemed a nuisance or a dangerous machine. It said: "An automobile, however, is not deemed to be a nuisance or a dangerous machine (*Cunningham* v. *Castle*, 127 App. Div. 580; *Ruoff* v. *Long & Co.*, L. R. [1916] 1 K. B. 148; *Vincent* v. *Crandall & Godley Co.*, 131 App. Div. 200),

---

* Query: If a driver stops his vehicle on a roadside, leaves his engine running but puts it into neutral with parking brake set, and gets out to inspect a front tire, is he guilty of contributory negligence, as a matter of law, in his action against a passenger who negligently starts the vehicle into motion, thus causing the injuries he sustained?

and, therefore, the owner or the person in whose custody it is may leave it standing in a public street temporarily without thereby being subjected to a charge of negligence, at least, provided he takes the ordinary precautions of securing it by the appliances with which it is equipped for that purpose, and if it thereafter be set in motion by the willful or negligent act of a third party, such willful or negligent act will be deemed the proximate cause of the accident or the injury resulting therefrom ". (For many other cases in this State and elsewhere which exemplify this principle, see Ann. 51 A. L. R. 2d: Automobile — Started by Stranger, 633 *et seq.*; Ann. 16 A. L. R. 2d 979 *et seq.*; Ann. 26 A. L. R.: Automobile Unattended, 912 *et seq.* Universally, the problem has been not so much whether there was negligence as a matter of law, but whether a verdict for plaintiff could be sustained [see, e.g., *Walter* v. *Bond,* 267 App. Div. 779, affd. 292 N. Y. 574].)

Cases like *Hess* v. *Pawloski* (274 U. S. 352) and *Bessan* v. *Public Serv. Co-ordinated Transp.* (135 Misc. 368) are beside the point. They involved constitutional justification for substituted service on nonresident motorists involved in local accidents.

The rule then which obtains is that the operator of an automobile is liable for injuries his vehicle causes only if he has been guilty of negligence by the standards of care which depend upon all of the circumstances — a question of fact as in the vast bulk of most negligence cases. Included within the orbit of this principle, of course, is the further rudimentary proposition that if the willful or negligent act of another was responsible for precipitating the accident the automobile operator will be liable if, as a reasonable man, he should have foreseen the incidence of such act. This, too, simply remits the court to another category of fact.

Accordingly, the order should be affirmed, on the law, with costs to defendants-respondents.

RABIN and McNALLY, JJ., concur with M. M. FRANK, J.; BREITEL, J., dissents and votes to affirm in opinion, in which BOTEIN, P. J., concurs.

Order denying motion to strike the answer of the defendants and for an assessment of damages reversed on the law, with $20 costs and disbursements to appellants and motion granted, with $10 costs.

Settle order.