Morris Hirsch, Respondent, v S. Berger Import & Mfg. Corp. et al., Appellants.

First Department, March 15, 1979

## APPEARANCES OF COUNSEL

*John M. Schwartz* of counsel (*Julie Copeland* with him on the brief; *Gold, Farrell & Marks,* attorneys), for appellants.

*Joseph H. Einstein* of counsel (*Stephen Mallis* and *Aranow Brodsky Bohlinger Benetar & Einhorn* with him on the brief; *Peter L. Jacobs, P. C.,* attorney), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

Plaintiff, a former salesman in defendant's employ, seeks the recovery of commissions allegedly due for the period of February, 1968 through December, 1972. Originally employed on a salary basis, plaintiff orally agreed with defendant to have his compensation as of July, 1970, based on commissions. Thereafter plaintiff received monthly advances of $1,600. He was to receive periodic additional payments when earned commissions exceeded the aggregate of the advances.

After a period of continued disagreement as to the amount of commissions due, a written agreement was entered into, dated June 25, 1971, between plaintiff and Florabelle Flowers,

Inc., as employer, in behalf of itself and its affiliated companies, of which defendant was one.

The agreement provided for, *inter alia,* the payment of commissions which in no event were to exceed $35,000, gross, in any 12-month period. Commissions could not be accumulated to carry over from any 12-month period into the succeeding period. The employer retained the right to terminate the employment for any reason whatsoever upon 30 days' written notice. Plaintiff would have a right to commissions only on orders or reorders received by the employer within 40 days after his employment terminated.

There was also a provision in the agreement whereby plaintiff released any and all claims which had accrued prior to execution of the agreement. The stated consideration for the release was $5,000, the receipt of which was expressly acknowledged in the release.

There is no real dispute that the 12-month period began with the signing of the contract, and it is conceded that plaintiff received $51,000 in commissions from the date of the signing until his discharge by defendant on December 19, 1972. Subsequent to the execution of this agreement and until his discharge, plaintiff received a $2,000 monthly advance on commissions.

In the fall of 1971 there was a discussion between plaintiff and a representative of defendant about the amount of commissions due. Thereafter, on January 5, 1972, plaintiff received two checks from defendant. One was his regular $2,000 monthly advance on commission, while the other bore the legend: "Paid in Full thru 10/1/71." Plaintiff indorsed and negotiated both checks.

Defendant moved for partial summary judgment (CPLR 3212, subd [a]) dismissing plaintiff's claim for recovery of commissions accruing prior to October 1, 1971 or, alternatively, June 25, 1971, and for an order narrowing the factual issues for trial (CPLR 3212, subd [g]) to the amount of commissions earned by plaintiff from either June 25, 1971 or October 1, 1971, whichever date applies, until the expiration of the 40-day period after his discharge, up to a maximum of $19,000.

Defendant asserted the negotiation of the January 5, 1972 check as an accord and satisfaction of all claims for commissions accruing prior to October 1, 1971; the release contained in the June 25, 1971 agreement as a bar to all claims for commissions which accrued prior to June 25; and the terms of

the June 25 agreement as a bar to any recovery beyond $19,000. The limitation of $19,000 is arrived at by deducting the $51,000 plaintiff had admittedly received from the gross sum of $70,000, which is the most he could earn under the contract over a period of two years.

Plaintiff seeks avoidance of the consequences of the written agreement by asserting the existence of an oral condition precedent. He contends that the agreement was executed on the understanding that it would have effect only if plaintiff voluntarily terminated his employment.

■ ■ While parol evidence may be admitted to show the existence of a condition to the legal effectiveness of a written agreement, parol may not be used to show a condition precedent which contradicts, varies or negates the terms of the written agreement. (*Hicks v Bush*, 10 NY2d 488; *Meadow Brook Nat. Bank v Bzura*, 20 AD2d 287.) This alleged oral condition precedent flatly contradicts the terms of the agreement, including the release provision. Thus, it may not serve to defeat the terms of the written agreement.

■ Plaintiff also denies receipt of the $5,000 which is recited as the consideration for the release. His explanation that a check in that amount dated July 7, 1971, was not such consideration, as defendant contends, but was simply a regular commission payment, loses all credibility when viewed in the light of surrounding circumstances. Parenthetically, it should be noted that plaintiff is not sure of the date the agreement was signed, while defendant's President, Joel Schur, who signed on behalf of Florabelle and its affiliates, testified at his deposition that the signing and payment of the July 7, 1971 check was simultaneous.

On June 30, 1971, plaintiff had already received his regular commission advance of $2,000 for July, 1971, so that the July 7th check did not represent the normal draw for July, or August for that matter, since he was paid his $2,000 August advance on August 11, 1971. Of even greater significance, though, is the fact that plaintiff had received a check on April 20, 1971, after he had already been paid his May draw, in the sum of $5,000 with the notation "Commission to July 1, 1971." Thus, having already received his commissions to July, 1971, plaintiff cannot now repudiate the second $5,000 check, the July 7, 1971 payment, as the consideration for the release by asserting that it was a regular commission payment. If this check had any significance in the events of that period it was

as payment in settlement of the commission dispute, a recurrence of which the June 25, 1971 agreement was intended to prevent. The fact that the July 7th check did not bear any legend or notation to that effect does not preserve any issue of fact for trial.

On a motion for summary judgment the court's inquiry must be directed to a determination of whether the factual issue is "genuine or unsubstantiated." *(Di Sabato v Soffes,* 9 AD2d 297, 300.) "If the issue claimed to exist is not 'genuine, but feigned, and * * * there is in truth nothing to be tried' summary judgment is properly granted." *(Rubin v Irving Trust Co.,* 305 NY 288, 306, citing *Curry v Mackenzie,* 239 NY 267, 270.) "It is incumbent on the court, therefore, to search the proof, if any, as proffered by affidavits or otherwise, to ascertain whether it discloses a real issue, rather than a formal, perfunctory, or shadowy one." *(Di Sabato v Soffes,* 9 AD2d 297, 300, *supra.)*

Plaintiff also claims that since defendant was not a signatory to the June 25, 1971 agreement it may not avail itself of its terms. This argument is specious. The agreement was executed in behalf of Florabelle and its "affiliated companies." Plaintiff admits that he had never been employed by Florabelle, but only by defendant, its affiliate. The two corporations had shared offices in New York and New Jersey. Plaintiff knew of the relationship between parent corporation and subsidiary. The president of the defendant corporation had signed the agreement for Florabelle and its affiliates.

Nor do we find any issue of fact as to the legal effect of the January 5, 1972 check marked "Paid in Full thru 10/1/71." In this factual setting, there was no ambiguity in this notation. Its import was clear. Where the amount of an obligation is in dispute, and the debtor sends a check clearly expressing the intention that the check is in full payment, the cashing of that check by the creditor is deemed an acceptance of the stated condition and operates as an accord and satisfaction of the claim: "The tender and the condition could not be dissevered. The one could not be taken and the other rejected. The acceptance of the money involved the acceptance of the condition and the law will not permit any other inference to be drawn from the transaction. Under such circumstances the assent of the creditor to the terms proposed by the debtor will be implied, and no words of protest can affect the legal quality of his act." *(Fuller v Kemp,* 138 NY 231, 237.)

As noted in Williston, where a check is offered in settlement of an unliquidated or disputed claim, the law permits but two alternatives, either reject, or accept in accordance with the condition. (15 Williston, Contracts, § 1856, and the cases cited therein.)

As we also find no merit in plaintiff's other contentions, defendant's motion should be granted. Recovery on claims for commissions shall be limited to those accruing after October 1, 1971, since we find that the parties reached an accord and satisfaction on all commission claims to that date. The right to commissions· terminates on all orders and reorders not received by defendant, on or before January 28, 1973, the 40th day after plaintiff's termination. Recovery shall be limited, in any event, to $19,000.

Accordingly, the order, Supreme Court, New York County (KLEIN, J.), entered March 27, 1978, denying defendants' motion for partial summary judgment and for a limitation of the factual issues to be tried, should be reversed, on the law, with costs and disbursements, and the motion granted. Settle order.

BIRNS, J. P., SANDLER and SILVERMAN, JJ., concur.

Order, Supreme Court, New York County, entered on March 27, 1978, denying defendants' motion for partial summary judgment and for a limitation of the factual issues to be tried, unanimously reversed, on the law, and the motion granted. Appellants shall recover of respondent $75 costs and disbursements of this appeal.

Settle order.