HENRY MANLEY, III, Respondent, v PANDICK PRESS, INC., Appellant.

First Department, February 14, 1980

## APPEARANCES OF COUNSEL

*Michael B. Mukasey* of counsel *(Patterson, Belknap, Webb & Tyler,* attorneys), for appellant.

*William G. O'Donnell* of counsel *(Stuart F. Gartner* with him on the brief; *O'Donnell & Gartner,* attorneys), for respondent.

## OPINION OF THE COURT

SANDLER, J.

Plaintiff Manley, employed for many years by the defendant Pandick Press as a printing salesman, sues for damages arising out of the allegedly wrongful termination of his employment. Defendant moved for summary judgment dismissing the first through fourth and eighth causes of action, and further moved to dismiss the fourth through seventh causes of action for failure to state a cause of action. Special Term denied the motions, finding that they were premature, with leave to defendant to renew its motions upon completion of disclosure. (CPLR 3212, subd [f].)

The complaint sets forth eight causes of action. Four allege violation by the defendant of varying contractual obligations

(first through third and eighth); three are based on different theories of tort liability (fifth, sixth and seventh), and one alleges a violation of section 296 (subd 1, par [a]) of the Executive Law prohibiting employment discrimination based on age.

■ In the fourth cause of action, asserting age discrimination, plaintiff has coupled with the allegation that he was dismissed solely because of age the inconsistent claim that his discharge was intended to deprive him of salary and commissions. These additional allegations, properly included in other causes of action, have no place in this cause of action, which is otherwise legally sufficient. Accordingly, the fourth cause of action is dismissed with leave to replead.

■ As to the fifth and sixth causes of action claiming intentional and prima facie torts, the allegations present no exception to the general rule that a breach of contract does not by itself give rise to a tort action. *(Wegman v Dairylea Coop.,* 50 AD2d 108, 112.)

■ The seventh cause of action, asserting that defendant corporation tortiously interfered with its own contract, quite clearly does not state a legally sufficient cause of action and must also be dismissed. (See *Greyhound Corp. v Commercial Cas. Ins. Co.,* 259 App Div 317, 320.)

■ The principal issue raised on this appeal is presented by defendant's argument that a check issued to and cashed by plaintiff constituted as a matter of law an accord and satisfaction requiring dismissal of the contract causes of action. We do not agree.

An essential component of an accord and satisfaction is a clear manifestation of intent by the debtor tendering less than full payment of a disputed unliquidated debt, that the payment has been sent in full satisfaction of the disputed claim. *(Hudson v Yonkers Fruit Co.,* 258 NY 168, 174; *Hirsch v Berger Import & Mfg. Corp.,* 67 AD2d 30, 34; *Consolidated Edison Co. of N. Y. v Arroll,* 66 Misc 2d 816, 818.) The required clarity, particularly where summary judgment is to be granted dismissing the major causes of action in the complaint, is not present in the exchange of correspondence between plaintiff Manley and defendant Pandick.

Plaintiff was fired by defendant on June 9, 1978, nine days into Pandick's fiscal year 1979. On October 20, 1978, after sending plaintiff interim statements and checks for salary and earned commissions, defendant advised plaintiff that "no Com-

mission will be paid on the Toledo Edison work, nor any other jobs billed subsequent to May 31, 1978, due to losses incurred by Pandick as a result of price adjustments in excess of $43,000, issued on your jobs in the quarter ended August 31, 1978."

Plaintiff answered by letter on November 9, 1978, expressing his understanding that he was entitled to receive commissions on unbilled work completed or in progress as of June 9, that his commissions were payable unless there were "abnormal markdowns" or "substantial adjustments", and requesting further information regarding the price adjustments of over $43,000 on the Toledo Edison and the other June 9 unbilled work, upon which defendant was refusing to pay commissions. Plaintiff concluded by stating: "I stand ready to accept an equitable settlement of these matters."

On November 17, 1979, defendant sent plaintiff a breakdown of price adjustments totaling $43,309 during the quarter ended August 31, 1978, including the disputed Toledo Edison and other jobs (Merrill Lynch and CIT Financial) billed subsequent to May 31, 1978, which had been the subject of the previous correspondence. On January 23, 1979, defendant sent plaintiff a check for $1,056 "representing your commission on Hopper Car invoice #4-001 and Nomura invoice #3-032, both of which were billed in fiscal 1978," i.e., not within the disputed period of June through August, 1978. Defendant's letter ended: "The attached check represents final settlement of all compensation due to you from your term of employment at Pandick, and no further statements will be forthcoming from Pandick."

The foregoing exchange of correspondence does not support a finding of accord and satisfaction as a matter of law.

First, the tendered $1,056 check represented commissions on work which was not disputed by the parties; thus plaintiff's negotiation of that check, representing only commissions undisputedly earned, cannot constitute an accord and satisfaction of the disputed claim. "What was paid had no connection with what was disputed and reserved. 'The payment of an admitted liability is not a payment of or a consideration for an alleged accord and satisfaction of another and independent alleged liability' " (Hudson v Yonkers Fruit Co., supra, at p 173).

Second, "the debtor must make it clear that the check which he sent is offered only on condition that it is taken in

full payment" of the disputed claim. (15 Williston, Contracts [3d ed], § 1856, p 555; *Carlton Credit Corp. v Atlantic Refining Co.,* 12 AD2d 613, affd 10 NY2d 723.) Indeed, it has been authoritatively stated: "The imposition of an accord and satisfaction on the creditor against his will can be justified only where his taking the check would be tortious except on the assumption of a taking in full satisfaction" (Williston, *id.,* p 558; *Hudson v Yonkers Fruit Co., supra,* at p 174). The correspondence in the instant case demonstrates that the $1,056 check only satisfied defendant's debt for commissions owed to plaintiff on the undisputed Hopper Car and Nomura invoices billed in fiscal 1978. Plaintiff's negotiation of this check, representing undisputed commissions earned by him, cannot possibly be deemed tortious.

Finally, the gross disparity between the $1,056 check and the substantially higher amounts claimed militates against a finding of accord and satisfaction.

To the extent there may be any support in this record for a finding of accord and satisfaction in the absence of unequivocal language expressive of intent, the issue of the intention of the parties is a matter for the trier of facts, be it court or jury *(Goldbard v Empire State Mut. Life Ins. Co.,* 5 AD2d 230, 234; *Galusha v Schur,* 21 AD2d 32, 34).

Accordingly, the order of the Supreme Court, New York County (STECHER, J.), entered September 5, 1979, should be modified, on the law, by dismissing the fourth, fifth, sixth and seventh causes of action, with leave to replead the fourth cause within 20 days after service of a copy of the order entered hereon with notice of entry, and, as modified, the order should be affirmed, without costs and without disbursements.

KUPFERMAN, J. (dissenting in part). I dissent from that portion of the majority's determination which affirms an order of Special Term denying summary judgment to defendant-appellant on causes of action (1) breach of contract for commissions due and owing, (2) unjust enrichment, (3) *quantum meruit,* and (8) breach of contract for future commissions, denominated in the majority opinion as "varying contractual obligations".

Plaintiff-respondent sought damages stemming from termination of his employment as a sales representative and vice-president of defendant-appellant. Plaintiff was employed by

defendant on a salary and commission basis from 1967 until he was allegedly wrongfully terminated on June 9, 1978, at the age of 61. Thereupon followed months of negotiations in pursuit of a resolution to the dispute of how much, if any, in commissions for past and future transactions were owed by defendant to plaintiff. On January 23, 1979, defendant sent a check to plaintiff with an accompanying letter which read, "The attached check represents final settlement of all compensation due you from your term of employment at Pandick and no further statement will be forthcoming from Pandick." Although plaintiff read the letter and endorsed the check, he now contends his acceptance was not intended to waive his claims. It is his contention that he understood the communication to be defendant's final position, and any further dispute was to be referred to counsel.

A close inspection of the correspondence between plaintiff Manley and defendant Pandick reveals the very clear intentions of both parties. These letters set forth their dispute concerning the calculation of the total amount of commissions due from sales generated by plaintiff in his final months of employment. There is a continuing discussion of price adjustments attributable to specific orders and corresponding offsets in commissions which were to be made from later orders.

A June 13, 1978 letter from plaintiff to defendant reported plaintiff's initial estimate of sales made, jobs completed but not yet billed, and additional sales and work in progress.

Defendant's July 25th reply included a first installment on commissions due for those orders on which commissions could be calculated—for the quarter ending May 31, 1978—plus a check for reimbursement of expenses to the date of termination. There was attached a schedule listing plaintiff's accounts and a statement noting the amount of uncollected sales. Defendant indicated a review would be made at the end of the quarter at which time another payment would be made of those commissions which could be calculated for items collected as of August 31, 1978.

A July 31, 1978 response from plaintiff noted the absence of an invoice for Toledo Edison dated May 31, 1978 and accounts for jobs billed subsequent to that date.

The October 20, 1978 letter from defendant enclosed a check reflecting commissions accrued on collected accounts through August 31, 1978. The exclusion of Toledo Edison and subsequent jobs billed was explained as an offset for price adjust-

ments issued on his jobs in the previous financial quarter ending August 31, 1978. Defendant further stated that another commission check would be forthcoming upon collection of amounts listed in an attached schedule if no additional price adjustments creating losses on those jobs were issued.

In a November 9, 1978 letter to defendant, plaintiff set forth his understanding of defendant's policy regarding price adjustments. He requested further information on the substantial price adjustments which would justify defendant's stance on this offset. Plaintiff Manley concluded this correspondence by stating, "Pandick [defendant] has been completely fair with me with respect to the other aspects of this severance, and I stand ready to accept an equitable settlement of these matters. I would very much like to conclude this matter in an amicable fashion."

Pandick's November 17, 1978 letter of explanation itemized the price adjustments, three accounts for the period ended August 31, 1978, one for September, 1978, and the possibility of yet additional adjustments on other Manley accounts. Defendant also advised Manley that, contrary to Manley's impression, offsets to commissions reflecting price adjustments had always been Pandick's policy, that commissions were only paid when aggregate sales in a commission period generated a net gain for Pandick.

The last communication and final check came from Pandick on January 23, 1979. The amount of $1,056 represented the final calculation of commissions due. This sum was generated from Manley's accounts with Hopper Car and Nomura, billed in fiscal year 1978, but collected in the past quarter. No commission was generated on the two Merrill Lynch invoices because of offsets previously referred to. Defendant stated that this accounted for all the jobs previously listed on schedules sent to Manley. After having made clear that all jobs attributable to Manley had thus figured into the calculations of commissions due, defendant concluded: "The attached check represents final settlement of all compensation due to you from your term of employment at Pandick, and no further statements will be forthcoming from Pandick."

Viewed in this factual setting, the language in the January 23rd letter clearly manifests the intent of Pandick to tender this final check in full satisfaction of plaintiff's claim for the aggregate of commissions due him, as required by a valid accord and satisfaction. *(Hudson v Yonkers Fruit Co.,* 258 NY

168; *Hirsch v Berger Import & Mfg. Corp.,* 67 AD2d 30.) The previous letter of November 9th had clearly demonstrated Manley's intent to settle the entire matter of commissions in a timely fashion.

The majority here points to the two accounts which were not specifically covered by the final check as indicative that the purported accord and satisfaction did not, in fact, cover claims for commissions on these accounts. This view takes these accounts out of the context of the extensive discussion of the aggregate of commissions and how that final amount was determined with reference to specific collections, adjustments and offsets. Pandick made it clear that the final check represented the remaining amount of commissions due after having reviewed all jobs for Manley's period of employment with the corresponding adjustments and offsets calculated as had been explained. The commissions that would have been earned on the Merrill Lynch and Toledo Edison accounts had been offset by the price adjustments on other jobs. The January 23, 1979 letter was not ambiguous, as plaintiff argues. The law is clear that acceptance by negotiation of this check with the stated terms that the amount represented all compensation due from the term of employment constituted a valid accord and satisfaction. *(Hirsch v Berger Import & Mfg. Corp., supra.)* Hence, defendant is entitled to summary judgment as to causes of action (1), (2), (3) and (8).

MURPHY, P.J., BIRNS and SULLIVAN, JJ., concur with SANDLER, J.; KUPFERMAN, J.; dissents in part in an opinion.

Order, Supreme Court, New York County, entered on September 5, 1979 modified, on the law, by dismissing the fourth, fifth, sixth and seventh causes of action, with leave to replead the fourth cause within 20 days after service of this court's order with notice of entry and, as modified, the order is affirmed, without costs and without disbursements.