■ ESTHER KAYE, Respondent, v GEORGE E. KERET et al., Appellants, et al., Defendants. — In a mortgage foreclosure action, defendants George and Betty Keret appeal (1) from an order of the Supreme Court, Queens County (Kassoff, J.), dated April 7, 1981, which granted plaintiff's motion to strike their answer and for summary judgment, and appointed a referee to ascertain and compute the amount due upon a mortgage note, and (2) from a judgment of foreclosure and sale of the same court (Lerner, J.), dated October 7, 1981 which, *inter alia,*

granted plaintiff's motion to confirm the referee's report. Appeal from the order dismissed (see *Matter of Aho,* 39 NY2d 241, 248). Judgment reversed, on the law, order vacated, and motion to strike appellants' answer and for summary judgment denied and motion to confirm denied. Appellants are awarded one bill of $50 costs and disbursements. The pertinent facts upon this appeal are not in dispute. In May, 1975, plaintiff's husband, Rubin Kaye, arranged a loan to Unistar Realty Corporation in the sum of $12,500 at an interest rate of 24% per annum. Appellants, husband and wife, were the principal owners of the corporation, which conducted a real estate business in Queens County. Appellants personally guaranteed the loan and gave the lender a second mortgage on their home as collateral for their guarantee. In late 1979 appellants ceased making payments claiming that they wanted to ascertain the remaining balance in order to pay off the loan. The instant foreclosure action was then commenced. After joinder of issue by appellants, plaintiff moved to strike their answer and for summary judgment. Special Term granted the motion and appointed a referee to, *inter alia,* compute the amount due on the note. In our view, appellants have raised triable issues of fact which preclude the granting of summary judgment. George Keret averred that starting in 1971 his wife developed cancer. Within the next few years she had a mastectomy, hysterectomy and spinal operation. She required a full-time helper at home and continuous treatment. She was treated at Mt. Sinai, Flower Fifth Avenue and Beth Israel Hospitals. Keret claimed that he sought the loan because his health insurance proved inadequate to pay his wife's doctor and hospital bills. He met with Rubin Kaye, explained that he needed the money for his wife's medical bills, and discussed the possibility of a loan secured by a second mortgage. According to Keret, Rubin Kaye demanded an interest rate of 24%. As this was a usurious amount, Kaye suggested that a corporation be formed and that the loan be personally guaranteed by appellants and secured by a second mortgage on their house. Since, however, appellants owned Unistar Realty Corporation, it was decided to make the loan to that corporation rather than form a new entity. The law is clear that the usury defense is unavailable to a corporation and to the individual guarantor of a corporate debt (General Obligations Law, § 5-521; *General Phoenix Corp. v Cabot,* 300 NY 87, 95; *Arrow Sav. & Loan Assn. v Wilmikwil Corp.,* 35 AD2d 840). An exception to the rule exists, however, when the corporate form is used to conceal what is actually a usurious loan made to an individual to discharge his personal obligations (*Schneider v Phelps,* 41 NY2d 238). Where a loan is in fact made to the individual parties, though in form to the corporation to hide the fact that an illegal rate of interest is being exacted, the courts will pierce the corporate veil (*Jenkins v Moyse,* 254 NY 319; *Buoninfante v Hoffman,* 48 AD2d 678; *Shapiro v Weissman,* 7 AD2d 752). Accordingly, if the purpose of the loan at bar was to allow appellants to discharge their personal debts, then usury would be a valid defense. In order for a defendant to successfully oppose a motion for summary judgment he must show that " 'he has a *bona fide* defense to the action, one which he may be able to establish. It must be a plausible ground of defense, something fairly arguable and of a substantial character. This he must show by affidavits or other proof' " (*Di Sabato v Soffes,* 9 AD2d 297, 300). The affidavit of George Keret indicates that his wife required extensive treatment for cancer which resulted in large medical bills. This case is distinguishable from *Federal Deposit Ins. Corp. v Salesmen Unlimited Agency Corp.* (61 AD2d 1023), cited by our dissenting colleague, where there was no showing of an extraordinary need for money which could not be avoided. Whether the loan at bar was actually obtained for the purpose of paying the medical bills is a question which should be decided at a trial.

Whenever a question of fact arguably exists, summary judgment should not be granted since the key to a motion for summary judgment is issue finding rather than issue determination (*Falk v Goodman,* 7 NY2d 87, 91). Since a trial is necessary to determine the legality of the loan, the referee's report should not have been confirmed. Damiani, J. P., Mangano and Brown, JJ., concur.

Lazer, J., concurs as to the dismissal of the appeal from the order, but otherwise dissents and votes to affirm the judgment, with the following memorandum: At issue here are the validity and nature of a transaction in which the plaintiff loaned $12,500 to Unistar Realty Corp. secured by a second mortgage on the home of defendants Betty and George Keret, of whom the latter is a principal of Unistar. Resisting foreclosure of their home, the Kerets assert that the corporate form of the loan masked a usurious transaction under which they were the actual borrowers. My colleagues have voted to reverse Special Term's grant of summary judgment of foreclosure. I respectfully dissent and vote to affirm. In my view, the usury defense is fatally flawed because of the appellants' failure to come forward with any evidence to show that Unistar served as a mere conduit for the transmission of the borrowed funds to the real borrowers. Absent this evidence, the attack on the ostensible corporate nature of the loan is cast in conclusory terms entitled to no factual weight that would defeat a motion for summary judgment. What is missing here is any evidence showing that the appellants received the loan proceeds and disbursed them for the personal purposes asserted. The factual backdrop is not complicated. In May, 1975, the plaintiff, Unistar and the Kerets executed instruments effectuating a $12,500 loan at an annual interest rate of 24% secured by the Kerets' guarantee and a mortgage on their home. Four and one-half years later, after the original three-year term of the loan had been extended, the appellants defaulted in their payments and this foreclosure action was commenced. Although the Kerets originally defaulted in pleading, they ultimately succeeded in opening the default and pleaded usury as a defense. Responding to plaintiff's motion for summary judgment, George Keret submitted an affidavit averring that in "1971-72", with his wife suffering from cancer, and the burden of medical costs imposing "tremendous financial pressure," he approached plaintiff's husband, Rubin Kaye, to obtain a loan. Kaye agreed to provide the funds to a corporation and both parties then decided that the borrower would be Keret's "working corporation", Unistar. In granting summary judgment of foreclosure, Special Term found that Unistar was a "viable corporate entity" through which defendant George Keret had been operating his business as a full-time real estate broker since 1974 and that the corporation "possesses assets, bank accounts, a business office and other indicia of corporate activity. This is not a situation where a shell or dummy corporation was organized merely as a conduit for the loan." Mr. Keret's opposition to plaintiff's motion was remarkable for its sparsity. His three-page affidavit maintains utter silence concerning the receipt and disbursement of the loan proceeds and concentrates instead on his need for money. So, while the parties disagree as to whether Mr. Keret told Mr. Kaye that he needed money for medical bills or whether he actually said that the corporation needed "capital" for real estate deals, the Kerets have scrupulously avoided illuminating the pivotal factual question — whether the loan proceeds were disbursed to them and by them to meet their stated personal needs. Despite my colleagues' effort to distinguish the case, it is apparent that their current determination overrules this court's relatively recent holding in *Federal Deposit Ins. Corp. v Salesmen Unlimited Agency Corp.* (61 AD2d 1023). In *Salesmen* (p 1024), a loan was made to "a viable ongoing concern" possessed

of assets. Opposing the lender's motion for summary judgment, one of the individual defendants at least declared: "'We did obtain the funds, and they were used for our own individual purposes, as explained hereinabove.'" Discerning a fact issue, Special Term denied summary judgment. In reversing, we noted that in cases where the plaintiff has been denied summary relief in the face of a usury defense, the borrower has provided the court with "documentation" to show that the loan proceeds were used to pay personal debts and expenses (*Schneider v Phelps*, 41 NY2d 238); to purchase a one- or two-family house (*North Broadway Funding Corp. v Freed*, 45 AD2d 759); to show that the corporation was defunct (*Pincus v W. B. Assoc.*, 54 AD2d 755); or to show that the corporation had been revived just for the loan (*Buoninfante v Hoffman*, 48 AD2d 678). The *Salesmen* court (*supra*, p 1024) concluded that the defendants' failure to supply necessary documentation was equivalent to a failure to produce "'proof of evidentiary facts showing the existence of a genuine * * * issue'" of fact (see, also, *Leader v Dinkler Mgt. Corp.*, 20 NY2d 393; *Federal Deposit Ins. Corp. v Cristo Realty*, 72 AD2d 553). The existing precedents lead me to believe that neither a prima facie case of usury nor even a fact issue as to its existence is made out if all the appellants show is that the corporate principals were in need of money and their corporation borrowed it at an interest rate usurious for individuals. If it is possible at all to establish the defense of noncriminal usury on a loan made to an active, asset-possessed corporation (see *Leader v Dinkler Mgt. Corp., supra*), evidence that the corporate principals were in personal need of funds falls far short of creating a fact issue in the absence of proof that the corporation served only as a conduit. I suspect our current determination will give the world of finance some pause when it is realized that recovery of a loan to a viable business corporation possessed of assets can be defeated or stalled by showing that the corporate principals told the lender that they had a personal need for money. Accordingly, I dissent and vote to affirm the grant of summary judgment to the plaintiff.