■ Equitable Tower Associates, Appellant, v Asarco Incorporated, Respondent.—Order, Supreme Court, New York County (Alfred Ascione, J.), entered March 3, 1986, which granted defendant's motion for partial summary judgment dismissing the second cause of action and denied plaintiff's cross motion for partial summary judgment on said cause of action, each upon the ground of accord and satisfaction, modified, on the law, to deny the defendant's motion, and, as modified, otherwise affirmed, without costs.

For approximately 70 years defendant Asarco Inc., a nonferrous metals and minerals company, maintained its offices in the Equitable Building located at 120 Broadway. The last lease entered into was between the 120 Broadway Company, the predecessor of plaintiff landlord, and defendant for a five-year term expiring on April 30, 1984. The lease contained a rider which, in pertinent part, provided for a rent credit of $100,000 for certain permanent improvements made to common areas, of which $50,000 had to be returned if defendant did not renew the lease. The obligation to return the $50,000 survived the expiration of the lease. The rider further provided for liquidated damages of 200% of the average monthly rent and additional rent which had been payable during the last six months of the lease in the event defendant held over beyond 90 days. Defendant's claim of an accord and satisfaction relates to the rent credit, as discussed below.

Defendant was not successful in negotiating a new lease with plaintiff, and was unable to vacate the premises immediately. The parties negotiated the terms and conditions for continued occupancy, with a staged removal to be completed by March 31, 1984. By memorandum dated May 11, 1984, the managing agent prepared a final rent tally for defendant which included a demand for "sundry charges" in the amount of $33,256.11, in addition to rent of $175,095.58. The memorandum stated "Holdover rent for May has been calculated at twice the amount payable for the month of April, prorated".

By contemporaneous memorandum prepared by the managing agent and signed on May 18, 1984, the parties memorialized their final agreement for vacatur of the premises as follows: "Asarco will forward a check in the amount of $175,905.58 representing [full and final payment] payment for occupancy * * * should this particular space (8,998 square feet on the 35th floor) not be vacated by the 31st day of May, Asarco will be billed accordingly based on the agreed form of calculation, that being 200% of the base rent plus all additional rent paid by Asarco during the month of April for 8,998

square feet. Electricity will be based on the regular amount paid for April." William Bennis, vice-president of defendant, apparently added the words in brackets, i.e., "full and final payment", to the agreement, and the parties initialed the change. Defendant did not vacate the 35th floor until June 4, 1984, and plaintiff demanded extra rent and utility charges, as well as "miscellaneous" charges of $37,251.41.

Partial summary judgment should not have been granted to defendant because it did not clearly and unequivocally manifest in the May 1984 memorandum agreement that, in tendering less than full payment of the disputed unliquidated debt, it intended the payment to be in full satisfaction of the disputed claims. *(Manley v Pandick Press,* 72 AD2d 452, 454 [1st Dept 1980], *appeal dismissed* 49 NY2d 981 [1980].) Defendant's insertion of the words "full and final payment" is not dispositive of the issue. The affidavit submitted by defendant's vice-president admits that under the pressure of the move, it could not confirm receipt of the $50,000 credit, and elected not to raise the issue because of the landlord's alleged uncooperative attitude. The use of the word "occupancy" in the subject agreement supports plaintiff's contention that it only intended to settle the terms for vacatur of the premises and charges for holdover rental and expenses attendant thereto. The subject agreement should only be read to cover matters which both parties intended to resolve. *(See, Cahill v Regan,* 5 NY2d 292, 299 [1959].) Where, as here, the written agreement contains no unequivocal language expressive of intent, intent is an issue to be determined by the trier of fact based upon the inferences to be drawn from the conversations and negotiations of the parties and the surrounding circumstances. *(Manley v Pandick Press, supra,* at 456; *Galusha v Schur,* 21 AD2d 32, 34 [3d Dept 1964]; *Goldbard v Empire State Mut. Life Ins. Co.,* 5 AD2d 230, 234 [1st Dept 1958].) Similarly, other issues of fact concerning whether the May 1984 agreement constitutes an accord and satisfaction precluded partial summary judgment for plaintiff. The trier of fact could infer an accord and satisfaction given the following circumstances: defendant inserted the words "full and final payment"; permitted plaintiff to invoke the 200% rent charge prematurely; and, the amount of the "final" payment appears to include the aggregate of rent for May 1984, sundry expenses, and the rent credit. Concur—Kupferman, J. P., Ross, Kassal, Rosenberger and Wallach, JJ.