OPINION OF THE COURT
Wachtler, J.
Plaintiffs, George and Marjorie Roukis, commenced this action for specific performance of a contract for the sale of a home and alternatively sought damages for the sellers’ alleged breach of the contract. Defendants Stanley and Elizabeth Skinner moved for summary judgment, which was denied by the Supreme Court. However, the Appellate Division reversed, granted the motion and dismissed the complaint. The plaintiffs have appealed as of right on the basis of the reversal.
The issue is whether the plaintiff buyers’ acceptance of a check representing a return of their down payment consti *593 tuted an accord and satisfaction under the circumstances. The Appellate Division held that it did.
The defendants own a house in Halesite on Long Island. On April 1, 1981, they entered into a contract with the plaintiffs to sell the house for $83,575. The contract provides that the purchasers will make a down payment of $8,000 on signing the contract, and will pay the balance of $75,575 at the time of closing. The contract further provides that it is subject to the purchasers obtaining an FHA mortgage in an amount of not less than $65,000 and states: “Purchaser shall have 60 days to obtain final bank approval and FHA, VA, CONVENTION [sic] commitment approval. Unless attorney for Seller receives written notice that the aforesaid approvals have been obtained within the dates set forth herein, irrespective of whether said approval and/or commitments shall have actually been obtained, the Seller shall have the option of cancelling this contract and upon return to the purchaser of the downpayment said hereunder, both parties shall be released from any further liability to the other.”
At the contract-signing plaintiffs made the down payment of $8,000 to the sellers’ attorney who held the money in escrow as required by the contract.
On June 2, 1981 the sellers’ attorney sent the plaintiffs’ attorney the following letter:
“Confirming our telephone conversation please be advised that my client has elected to cancel the contract because of the fact that a firm mortgage commitment has not been obtained within the 60 day period as called for under the contract.
“Enclosed you will find my check payable to the order of your client in the amount of $8,000.00 which sum represents the down payment.”
On June 22, 1981 the plaintiffs commenced this action seeking specific performance of the contract of sale, or $30,000 in damages in the event specific performance could not be awarded. In essence they alleged that they had diligently applied for an FHA mortgage, had obtained conditional approval, but had been unable to obtain final approval because the defendants would not respond to *594 their requests to enter the premises to make certain minor repairs required by the FHA. They stated that they “have been at all times and are now ready, willing and able to perform the said agreement and pay the defendants the aforesaid sum of $83,575.00” but that the defendants “have refused and still refuse to deliver a deed”.
On July 18, 1981 the plaintiffs cashed the check which they had received from the defendants’ attorney as return of their down payment.
In their answer the defendants admitted signing the contract and refusing to deliver the deed, but otherwise denied the material allegations. The 60-day notice provision was asserted as an affirmative defense in which the defendants alleged that their attorney “did not receive written notice on or before May 31,1981 that plaintiffs had obtained both ‘final bank approval’ and ‘FHA commitment approval’ ”. They claimed that on “June 2,1981, the defendants exercised their option to cancel the contract, through their attorney by so notifying plaintiffs’ attorney and by returning the contract deposit of $8,000.00”.
On November 29, 1982, the plaintiff George Roukis was questioned at an examination before trial, during which he admitted cashing the check representing the return of his down payment. He stated, without elaboration, that he had done so after consulting with his lawyer.
On May 25, 1983 the defendants moved for summary judgment, claiming that the cashing of the check constituted an accord and satisfaction. They noted that it was accompanied by a letter in which the defendants’ attorney had stated that the check for their down payment was enclosed because the defendants had decided to exercise their option to cancel the contract. The defendants contended that the plaintiffs could not accept the check without also accepting the condition, and that the contract was therefore canceled.
The plaintiffs opposed the motion on the ground, among other things, that there could be no accord and satisfaction where the defendants had simply returned the plaintiffs’ own money to them. The defendants countered by urging that the check was not a return of the plaintiffs own *595 property “but was a return of the contract deposit that belonged to the defendants pursuant to the contract * * * [T]he return of the contract deposit was not due to plaintiffs Roukis except upon cancellation of the contract”.
In opposition to the motion the plaintiffs submitted their own affidavits, and an affidavit by the real estate broker[1] stating that the defendants had first offered their house for sale in 1980. Although the plaintiffs had agreed to buy it and had signed a binder to this effect, defendants refused to sign a contract of sale after the plaintiffs had made certain expenditures. The second contract of sale, at issue on this appeal, was signed the following year after the defendants had approached the plaintiffs, through the same broker, and again offered the house for sale. The affidavits recite in considerable detail the efforts and expenditures the plaintiffs made to meet the 60-day time limit. They also recite the repeated efforts the plaintiffs and the real estate broker allegedly made to obtain the defendant’s permission to enter the premises to permit an FHA inspection prior to he conditional commitment, and to make repairs required by the FHA after the inspection had been completed.
The trial court denied the motion for summary judgment[2] but the Appellate Division reversed on the law. The relevant portion of its memorandum states: “[W]e agree with the defendants that, under the circumstances here present, plaintiffs’ negotiation of the check, especially after consultation with their attorney, constituted a bar to this action under the common-law principle of accord and satisfaction (Gimby v Frost, 84 AD2d 806; see Broido v Busick, 33 Misc 2d 804). Accordingly, the defendants are entitled to summary judgment dismissing the Roukis’ complaint.” (101 AD2d 855.)
 In our view the Appellate Division erred in two respects: first, by concluding that the letter accompanying *596 the check constituted a basis for an accord and satisfaction; secondly, and more fundamentally, by holding in effect that sellers who have decided not to perform a realty contract may generally require the buyers to relinquish their rights under the contract as a condition to the return of their down payment.
As a general rule, acceptance of a check in full settlement of a disputed unliquidated claim operates as an accord and satisfaction discharging the claim (Nassoiy v Tomlinson, 148 NY 326; Ann., 34 ALR 1035; 75 ALR 905; Restatement, Contracts 2d, § 281, Comment d). The theory is that the parties have made a new contract discharging all or part of their obligations under the original contract (6 Corbin, Contracts, § 1276; Restatement, Contracts 2d, § 281). Although the use of a conditional check may put the creditor in a position where he will have to make an “embarrassing * * * choice” (Hudson v Yonkers Fruit Co., 258 NY 168, 172 [Cardozo, J.]), it is a generally accepted method of settling contract disputes (Rosenblatt v Birnbaum, 16 NY2d 212; Nassoiy v Tomlinson, supra; Ann., 34 ALR 1035, 1046; 75 ALR 905; Restatement, Contracts 2d, § 281, Comment d).[3]
Such agreements are enforceable, however, only when the person receiving the check has been clearly informed that acceptance of the amount offered will settle or discharge a legitimately disputed unliquidated claim (Hudson v Yonkers Fruit Co., 258 NY 168,174, supra; 6 Corbin, op. cit., § 1277). In the case now before us, neither the check nor the letter accompanying it expressly stated that the check was offered in settlement of any outstanding dispute arising out of the contract. Nevertheless, the defendants urge that the transaction should be given this effect because the letter accompanying the check clearly states the defendants’ intent to cancel the sales contract (see, e.g., Gimby v Frost, 84 AD2d 806).
That intent, however, is qualified by the reference to the defendants’ contractual option to cancel which would *597 not be available to them if, as the plaintiffs contend, the defendants frustrated the plaintiffs’ ability to obtain the mortgage commitment in the time prescribed (Grad v Roberts, 14 NY2d 70; Aimies v Wesnofske, 255 NY 156, 162-163; Patterson v Meyerhofer, 204 NY 96, 100-101; 3A Corbin, op. cit., § 767; Simpson, Contracts [2d ed], § 169; Restatement, Contracts 2d, § 245). Thus by its terms, the letter simply purports to exercise the defendants’ rights under the contract. It does not offer to settle any dispute or advise the plaintiffs that acceptance of the check will cancel the contract, even if the contract of sale would not entitle the defendants to cancel under the circumstances. It does not, in short, evidence a clear intent to alter or modify the original contractual terms or settle a dispute concerning them.
In any event, the defendants should not be permitted to condition the return of the down payment on the plaintiffs’ relinquishing their rights under the contract of sale. As a rule a condition attached to a check requiring the recipient to surrender contractual rights will not serve as an accord and satisfaction if the check simply represents a return of the recipient’s own property (Hudson v Yonkers Fruit Co., supra). We note, however, that this court has not previously considered whether this principle applies to the return of down payments made in connection with realty contracts. The cases from the lower courts are inconclusive.
In the cases cited by the defendants, where the courts found an accord and satisfaction (Gimby v Frost, 84 AD2d 806, app dsmd 56 NY2d 593, supra; Broido v Busick, 33 Misc 2d 804), this point was not considered or discussed. The case cited by the plaintiffs (Car-Lynn Realty Corp. v Almar Props., 30 AD2d 808), in which the court applied the principle and found no accord and satisfaction, is unusual because it only involved a suit for damages, the property having been sold to a third party before the check was cashed.
In the case now before us, the defendants argued in the trial court that the check did not represent a return of the plaintiffs’ own property “but was a return of the contract deposit that belonged to the defendants pursuant to the contract”. Thus, the defendants’ claim to ownership of the *598 money was predicated entirely on the contract of sale. But once they refused to perform the contract by delivering the deed, there was no longer any basis on which they could claim that the money still belonged to them. That is so whether their refusal to perform was justified, as they contend, or constituted a breach of the agreement, as the plaintiffs urge. In either event the defendants, having refused to perform the contract, had no right to retain the plaintiffs’ down payment.
That is not to say that the parties to a real estate contract are precluded from canceling the contract and extinguishing all liability after a dispute arises. This could be accomplished in a number of ways. They could mutually and expressly adopt an agreement to this effect. One of the parties could propose an accord, including substituted performance, or a conditional check representing something more than a return of the recipient’s own property, which, if accepted, would be enforceable. But when the seller simply returns the buyer’s down payment, acceptance of the check should not be considered an accord and satisfaction because the check constituted nothing more than a return of the buyer’s ovzn property.
Accordingly, the order of the Appellate Division should be reversed, with costs, the motion for summary judgment made by the defendants denied, and the complaint reinstated.
Chief Judge Cooke and Judges Jasen, Jones, Meyer, Simons and Kaye concur.
On review of submissions pursuant to section 500.4 of the Rules of the Court of Appeals (22 NYCRR 500.4), order reversed, etc.

. After the commencement of this action the broker brought a separate action to recover the brokerage commission. Although the two actions were later consolidated for trial, the present motion for summary judgment relates only to the Roukis complaint. The broker’s suit is not before us.

. This motion was denied on the ground that the denial of a prior motion for summary judgment constituted the law of the case. The record does not indicate the basis for the prior motion. In any event the plaintiffs do not challenge the Appellate Division’s threshold determination that denial of the defendants’ first motion for summary judgment does not preclude consideration of this second motion for summary judgment under the circumstances of this case. There is therefore no need for us to address the question.

. But also see, for analogy, Uniform Commercial Code, § 1-207; Rosenthal, Discord and Dissatisfaction: Section 1-207 of the Uniform Commercial Code, 78 Col L Rev 48; Hawkland, Effect of UCC § 1-207 On the Doctrine of Accord and Satisfaction by Conditional Check, 74 Com LJ 329.