**ODYSSEY INTERNATIONAL LIMITED, Plaintiff,**

v.

**REEBOK INTERNATIONAL LIMITED, Defendant.**

No. 87 Civ. 3195 (WK).

United States District Court, S.D. New York.

July 27, 1989.

John K. Ford, Norwalk, Conn., and Aegis J. Frumento, New York City, for plaintiff.

Ralph F. Boyd, Jr., Ropes & Gray, Boston, Mass., and Ilissa Rothschild, Stillman, Friedman & Shaw, P.C., New York City, for defendant.

### MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Plaintiff Odyssey International Limited ("Odyssey"), having supplied fabric and other items to Defendant Reebok International Limited, sues for breach of contract. Defendant Reebok International Limited ("Reebok"), asserting an affirmative defense of accord and satisfaction based on Plaintiff's deposit of a check tendered in "Settlement of outstanding invoices due Odyssey," moves for partial summary judgment.[1] Plaintiff cross-moves for partial summary judgment striking this affirmative defense. For the reasons stated below, we grant Plaintiff's motion and deny Defendant's contrary motion.

### BACKGROUND

Odyssey is a Hong Kong corporation with its principal place of business in Hong Kong, and Reebok is a domestic corporation and has its principal place of business in Massachusetts. During 1986 and 1987, Odyssey agreed to manufacture and deliver various items of clothing to Reebok. In November, 1986, officers of Reebok and Odyssey met to discuss Reebok's failure to

---

1. Defendant's motion does not apply to the claims that Plaintiff set forth for the first time in the amended complaint because the invoices

from which these new claims arise were not intended to be included in Defendant's settlement offer.

pay certain fabric charges, quota charges, airline ticket fees, and money advanced to Reebok personnel in Hong Kong.[2] These charges remained unpaid, and, on March 25, 1987, Odyssey sent Reebok a statement of outstanding invoices totaling $421,-614.72. On April 28, John Ford, counsel to Odyssey, sent the chairman of Reebok a summary of past due invoices. The letter closed with the following statement:

> ... there is no doubt that the courts in New York will award a judgement to my client. Reebok has never disputed one invoice.
>
> This letter is a courtesy to you because you may not be aware of the problem. I recommend that this matter be settled amicably and rapidly before the expense of defending a lawsuit in New York becomes unavoidable.

On May 4, Douglas Arbetman, President of the Apparel Division of Reebok, prepared the following letter to William Simon, President of Odyssey:

> Enclosed is a check for $66,062.95 *in settlement of our outstanding invoices* due you. The amount was calculated based upon your 25 March 1987 statement with adjustments as per the attached schedules.
>
> Please note the following adjustments (see Attachment I):
>
> # 1) The excess fabric adjustments appear to have been corrected, however, since the Summer and Fall fabrics became excess based on your decision *not* to proceed with our programs, we do not consider it a valid claim.
>
> # 2) The other claims are a combination of garment quality problems (see Attachment II), and handling/repacking type chargebacks. Details of the styles and loss calculation are also attached.
>
> # 3) An additional adjustment for $15,-832.68, for cancellation of Style A53520 has also been made, since we

were unaware of any fees associated with this cancellation.

> As you know, the intangible losses that Reebok has realized is [sic] far greater than the dollars highlighted in these schedules. The inconsistency of Odyssey's delivery schedule, combined with the excessive amount of quality problems has resulted in a high percentage of customer cancellations, quality returns and markdown/off price sales. It will certainly take a number of seasons before we can restore our customer's confidence in Reebok's ability to perform. (emphasis supplied)

The "enclosed" $66,062.95 check was not signed until May 8, upon which date Arbetman mailed both the May 4 letter and the check. The receipt stub attached to the check contained the notation: "Settlement of *outstanding invoices* due Odyssey." (emphasis supplied)

Also on May 8, Odyssey filed its complaint in the instant action for payment of the March 25 invoices, which, as we have noted, totalled $421,614.72. Reebok received a copy of the complaint on May 12.

On May 13, Ford sent a letter to Steve Goldstein, corporate counsel for Reebok, acknowledging receipt of Arbetman's letter and check, and stating that he did not have enough information to respond to the "defective garment/chargeback allegations" but asking that "the defective items be put aside for a joint survey in the immediate future, so that a settlement formula can be worked out." Shortly thereafter, Gordon Saggs, then President of Odyssey, New York, a sales representative of Odyssey, called Arbetman to express his dissatisfaction with the check as a response to the March 25 invoices. On May 19, Odyssey deposited the $66,062.95 check. After the check had been deposited, Simon called Paul Kozma, the vice president of Reebok's manufacturing division, to complain that the check was insufficient payment of Reebok's debts to Odyssey.[3]

---

**2.** Also by letter dated November 11, 1986, Reebok notified Odyssey of several claims of lost profits from what appear to be delayed delivery and defective merchandise.

**3.** At the time these cross motions were initially argued, Odyssey had submitted affidavits from both Simon and Kozma (Kozma is no longer a Reebok employee), but neither had been de-

## DISCUSSION

Where a creditor accepts a check in a lesser amount than the debt he claims to be owed, accord and satisfaction only results where such acceptance would be " 'tortious except on the assumption of a taking in full satisfaction.' " *Hudson v. Yonkers Fruit Co.* (1932) 258 N.Y. 168, 174, 179 N.E. 373 (citing 3 Williston on Contracts, § 1854 and *Lovekin v. Fairbanks, Morse & Co.* 282 Pa. 100, 103, 127 A. 450). In other words, a creditor accepting such a check will not be found to have entered into an accord and satisfaction unless it has been presented to him in circumstances leaving no room for a reasonable belief that he is entitled to cash it without discharging the entire debt. *Merrill Lynch Realty v. Skinner* (1984) 63 N.Y.2d 590, 596, 597, 483 N.Y.S.2d 979, 982, 473 'N.E.2d 229, 232.

Despite the clarity of this doctrine, cases rejecting claims of accord and satisfaction are difficult to categorize. There are, however, several fact patterns which seem frequently to result in such rejection. One such pattern involves an offer that, without specifically so providing, is claimed to have been tendered in settlement of more than one existing or potential dispute between the parties. *See, e.g., Envirex, Inc. v. Cecil M. Garrow Construction, Inc.* (3d Dep't 1984) 99 A.D.2d 307, 473 N.Y.S.2d 63; *Manley v. Pandick Press, Inc.* (1st Dep't 1980) 72 A.D.2d 452, 424 N.Y.S.2d 902 *app. dismissed* (1980) 49 N.Y.2d 981, 428 N.Y.S.2d 950, 406 N.E.2d 805; *In the Matter of Estate of Leckie* (4th Dep't 1976) 54 A.D.2d 205, 388 N.Y.S.2d 858. Another concerns an offer that is disproportionately small relative to the outstanding debt that it purports to settle. *See, e.g., Manley, supra,* 424 N.Y.S.2d at 905.

The instant case contains elements of both of these fact patterns. In the first

place, Arbetman's letter recited two potential disputes. One concerned relatively insignificant "adjustments" to the amounts billed in the invoices (*see* items # 1 and # 3, Arbetman letter, *supra*), and the other asserted "unrealized profits" and "chargebacks" amounting to over one-half of Reebok's debt (*See* item # 2, Arbetman letter, *supra*). This combination infused the concept of settlement of "outstanding invoices" with ambiguity. We note that the Odyssey–Reebok relationship had contained simultaneous claims of unpaid invoices and potentially offsetting counterclaims at least since late 1986. One would reasonably expect that any settlement offer designed to settle the whole range of outstanding disputes between the two companies would have explicitly mentioned such a purpose. Finally, it is significant that the purported "settlement" offer was less than one-sixth of the amount asserted to be due.

It follows that, under New York law,[4] no jury could reasonably find that Odyssey was wholly without justification in interpreting the offer as one to settle, if at all, only the relatively insignificant dispute as to the validity of certain amounts included in the "outstanding invoices." Although not determinative, it is worth noting that Odyssey's conduct after receiving the check, as illustrated by Ford's letter, clearly shows its impression that the counterclaims might be settled at a later date. Since Reebok's affirmative defense is asserted on the theory that the acceptance of the check worked an accord and satisfaction as to the entire amount, including the amount of the counterclaim, the defense must be stricken.

## CONCLUSION

Plaintiff's partial motion for summary judgment striking Defendant's affirmative

---

posed. The parties requested at oral argument that the motions be held in abeyance pending such depositions, and they have now submitted portions thereof in support of their contentions. The depositions do not cast doubt on the occurrence of this conversation, but they differ as to the clarity with which Simon reserved his rights to press Odyssey's claims against Reebok. However, it is not necessary for us to reach the question of whether or not Odyssey reserved its

rights. (In passing, we note that Simon's appearance for a deposition renders moot Reebok's motion to strike his earlier-filed affidavit).

4. The parties appear to be in agreement that New York law should apply, except with respect to the effect of U.C.C. § 1–207, an issue we do not reach.

defense of accord and satisfaction is granted, and Defendant's contrary motion is denied. Defendant's motion to strike William Simon's affidavit is also denied. The parties shall arrange for a telephone status conference with the court on September 13, 1989 at 5:00 p.m.

SO ORDERED.