■ COMPLETE MESSENGER & TRUCKING CORP., Appellant, v MERRILL LYNCH MONEY MARKETS, INC., Respondent.—Order, Supreme Court, New York County (Kristin Booth Glen, J.), entered on or about September 29, 1989, which, *inter alia,* denied plaintiff's motion pursuant to CPLR 3211 (b) to dismiss the affirmative defense of accord and satisfaction, raised in the

amended answer of defendant Merrill Lynch Money Markets, Inc. (Merrill Lynch), or, in the alternative, for partial summary judgment pursuant to CPLR 3212, dismissing the affirmative defense, is affirmed with costs and disbursements payable by plaintiff.

Plaintiff, a New York corporation providing messenger, delivery and pickup services nationwide, commenced the underlying action seeking to recover $310,000 in damages for the alleged breach of a letter agreement, dated June 1, 1983, between the plaintiff and A.G. Becker & Co., whose interests were subsequently acquired by defendant Merrill Lynch through a merger acquisition. Plaintiff's complaint alleged that defendant Merrill Lynch, in September of 1984, improperly canceled, without cause, the parties' agreement providing that the plaintiff would serve as the exclusive messenger and delivery service to A.G. Becker & Co.

Specifically, on September 21, 1984, Nancy Vincent, an attorney representing the successor in interest of A.G. Becker & Co., Becker Paribas, allegedly informed plaintiff's president, Leonard Santorelli, by telephone, that Becker Paribas was terminating the parties' contract due to the recent merger acquisition of Becker by defendant Merrill Lynch, and by subsequent letter, dated September 24, 1989, accompanied by a check in the amount of $46,107, notified the plaintiff of the termination of the letter agreement, effective December 31, 1984. Although plaintiff cashed that check without protest, nevertheless, by letter dated October 3, 1984, plaintiff's counsel rejected Becker's termination notice and indicated that the plaintiff would continue to provide services under the parties' agreement.

The acceptance of a check in full settlement of a disputed unliquidated claim without reservation operates as an accord and satisfaction discharging the claim since the theory underlying the common-law rule of accord and satisfaction is that the parties have entered into a new contract discharging all or part of their obligations under the original contract. (*Merrill Lynch Realty/Carll Burr v Skinner,* 63 NY2d 590, 596, *rearg denied* 64 NY2d 885.)

However, such agreements are enforceable only when the person receiving the check has been clearly informed that acceptance of the amount offered will settle or discharge a legitimately disputed unliquidated claim. (*Supra,* at 596.)

An essential element of an accord and satisfaction is a clear manifestation of intent by one tendering less than full payment of an unliquidated claim that the payment has been sent

in full satisfaction of the disputed claim *(see, Itoh & Co. v Honerkamp Co.,* 99 AD2d 417, 418). While the dissent finds the affirmative defense of accord and satisfaction deficient as a matter of law, its discussion of the deposition testimony of Ms. Vincent relating to the letter, as well as her earlier conversation with plaintiff's president Leonard Santorelli, establishes the existence of factual issues which are then summarily decided by the dissent on the basis of its own interpretation of the facts. Thus, the dissent notes that "Ms. Vincent never testified that the payments represented 'full payment' for the contract balance. Indeed, she testified to the contrary". However, Ms. Vincent's letter, alluded to by the dissent, specifically states "Becker Paribas recognizes no obligation under the [Letter] Agreement to make *any* payments * * * after December 31, 1984" (emphasis added). Further, as the IAS court noted, the letter refers explicitly to an earlier extensive telephone conversation between Ms. Vincent and Mr. Santorelli.

The dissent finds the letter "insufficient to effect an accord since it does no more than announce Becker's intention to cancel the contract" and " 'does not * * * evidence a clear intent to alter or modify the original contractual terms or settle a dispute concerning them' " (quoting *Merrill Lynch Realty/Carll Burr v Skinner,* 63 NY2d 590, 597, *supra).* The dissent further finds that the prior telephone conversation between Ms. Vincent and the president of plaintiff would constitute parol evidence since "there is no notification to that effect on either the check or the letter". However, the letter states in pertinent part *"As we discussed* on September 21, 1984 * * * Becker Paribas will no longer require the messenger and delivery services provided by the Corporation". (Emphasis added.) The Court of Appeals has noted in *Merrill Lynch Realty/Carll Burr v Skinner (supra)* that parties to a contract may cancel such contract and extinguish all liability in a number of ways. One of these modalities may be that: "One of the parties could propose an accord, including substituted performances * * * which, if accepted, would be enforceable" *(supra,* at 598). Here, as the IAS court noted in its decision, there is a possible interpretation of the facts herein that Becker, pursuant to discussion, agreed to prepay an amount due in the future and continue the contract in force for three months as part of an accord and satisfaction with plaintiff. Thus, examination of extrinsic evidence is required to determine the intent of the parties as to whether or not they intended to enter into an accord.

The IAS court properly denied summary judgment dismissing the defense inasmuch as triable issues of fact, dependent upon a determination as to the credibility and intent of the parties, were raised as to whether the defendant's tender of payment, under the circumstances, and plaintiff's acceptance of the $46,107 check constituted an accord and satisfaction sufficient to bar plaintiff's claim. Concur—Ross, Asch and Smith, JJ.

Sullivan, J. P., and Kassal, J., dissent in a memorandum by Sullivan, J. P., as follows: Since the affirmative defense of accord and satisfaction is deficient as a matter of law, plaintiff's motion to dismiss said defense should have been granted.

Plaintiff, a nationwide provider of messenger, delivery and pickup services, brought the instant action to recover $310,000 in damages for the alleged breach of a June 1, 1983 written contract, by which, for a fixed term of three years, it would be the exclusive provider of such services for the investment firm of A.G. Becker Paribas, Inc. the predecessor company to defendant Merrill Lynch Money Markets, Inc. The contract could be "cancelled for cause with a written notice 90 days prior to cancellation", and required Becker to pay either a flat monthly rate of $15,700 per month or a reduced prepaid quarterly rate of $42,300, which option Becker customarily exercised.

On September 21, 1984, Leonard Santorelli, plaintiff's president, received a telephone call from Nancy Vincent, a staff member of Becker's in-house counsel, advising Santorelli that plaintiff's services would no longer be required since Becker was merging into a larger company, Merrill Lynch. Ms. Vincent confirmed that conversation by letter to Mr. Santorelli, dated September 24, 1984, stating, in part:

"As we discussed on September 21, 1984, due to the recent merger acquisition of Becker Paribas Holdings Incorporated by Merrill Lynch & Co., Becker Paribas will no longer require the messenger and delivery services provided by [plaintiff].

"This shall constitute notice of Becker Paribas' termination of this Agreement, effective December 31, 1984. Enclosed herein you will find a check payable to [plaintiff] in the amount of $46,107, representing payment due [plaintiff] for the period October 1, 1984 to December 31, 1984.

"Becker Paribas recognizes no obligation under the Agreement to make any payments to [plaintiff] after December 31, 1984."

Plaintiff cashed the check tendered by Becker and, thereaf-

ter, by letter from counsel dated October 3, 1984, informed Becker that its recent merger into Merrill Lynch did not constitute "cause" so as to justify termination of the contract, and that it remained ready to provide the services contemplated by the agreement and expected payment in accordance therewith. This lawsuit, in which plaintiff seeks to recover the contract price for the remaining 18 months on the contract's three-year term, followed.

Although Merrill, in its answer, raised several affirmative defenses, it did not assert the defense of accord and satisfaction. In a ruling dismissing the second and third affirmative defenses as lacking in merit, the court held, insofar as is relevant, that the cancellation for "cause" was, in fact, based exclusively upon Becker's merger with Merrill and not any alleged deficiencies in plaintiff's performance. No appeal was taken from this ruling.

The court did, however, grant Merrill's cross motion to plead the affirmative defense of accord and satisfaction, which, as noted, it had failed to assert in its answer served over one year earlier. Discovery was conducted on the defense based, for the most part, on Merrill's newly raised claim that an accord was reached pursuant to a September 1984 "phone conversation" between Santorelli and Vincent. In her examination, Ms. Vincent admitted that "the essential terms of [their] conversation [were] contained" in her subsequent letter:

"Q. What did you tell him?

"A. I told him that due to the merger acquisition of Becker Paribas by Merrill, we would no longer need his services, and therefore we are giving him 90 days advance written notice under the agreement, and terminating the agreement effective December 31, 1984, and that I would be sending him a check representing payment for that three-month period."

Ms. Vincent never testified that the payments represented "full payment" for the contract balance. Indeed, she testified to the contrary:

"Q. But did you understand that the payment that you were making, that is the $46,107, was the prepayment for the next upcoming quarter; is that correct?

"A. Yes. * * *

"Q. Ms. Vincent, what did you understand the phrase representing payment due to the corporation for the period October 1, 1984 to December 31, 1984 to mean?

"A. That was the payment due to the corporation for services rendered during that last quarter, calendar year '84."

Plaintiff thereafter moved to dismiss the defense of accord and satisfaction pursuant to CPLR 3211 (b) or, alternatively, for summary judgment dismissing the defense pursuant to CPLR 3212. In denying the motion, the IAS court found that "[t]he payment tendered was not, as asserted by defendant, a partial payment. Rather, it was a full prepayment for services to be rendered during the next three months." With respect to the telephone conversation which Merrill alleged as constituting an accord, the court's only finding was that Becker had informed plaintiff that it was terminating the contract because of the merger with Merrill. Nevertheless, the court denied the motion solely because "[p]laintiff's assertion that it never intended to accept the check * * * in full settlement of the parties' contract dispute is flatly denied by defendant".

A prerequisite to the defense of accord and satisfaction is an express notification by the debtor that payment is being made in full settlement of a claim: "[A]cceptance of a check will operate as an accord and satisfaction only when the person receiving the check has been clearly informed that acceptance of the amount offered will settle or discharge the claim". *(Conboy, McKay, Bachman & Kendall v Armstrong,* 110 AD2d 1042, 1043.) Similarly, there must be a "clear manifestation of intent by one tendering less than full payment of an unliquidated claim that the payment has been sent in full satisfaction of the disputed claim". *(Itoh & Co. v Honerkamp Co.,* 99 AD2d 417, 418.)

Where the check or accompanying letter fails expressly to notify the creditor that the payment was "in full satisfaction" of defendant's contractual obligations, such failure is fatal even where the check is accompanied by written notice terminating the contract. *(See, Merrill Lynch Realty/Carll Burr v Skinner,* 63 NY2d 590, 596-597.) Here, neither the check nor letter tendered by defendant contained the requisite notification indicating that the payment fully satisfied Becker's obligation. Instead, the letter specifically recited that the check represented "payment due" plaintiff for a specific three-month period. Thus, plaintiff was never informed that negotiation of the check would constitute an accord and satisfaction for payments due for the remaining 18 months on the service contract. Although the letter purported to exercise Becker's right to terminate the contract and announced that it "recognize[d] no obligation" to make further payments, such language is clearly insufficient to effect an accord since it does no more than announce Becker's intention to cancel the contract and "does not * * * evidence a clear intent to alter or modify

the original contractual terms or settle a dispute concerning them." *(Supra,* at 597.)

Recognizing the inadequacy of its September 24, 1984 letter as an accord, defendant seeks to interject testimony of an oral accord. The fact that there is no notification to that effect on either the check or the letter is fatal to this claim. To permit the plain terms of the check or letter to be altered by parol evidence would completely vitiate the rule that "evidence of what was said between the parties to a valid instrument in writing, either prior to or at the time of its execution, cannot be received to contradict or vary its terms". *(Jamestown Business Coll. Assn. v Allen,* 172 NY 291, 294.) This rule applies to a check or note. *(Supra.)*

In any event, it must be noted, even if Ms. Vincent's conversation with Mr. Santorelli were admissible, it would still be insufficient to establish an accord and satisfaction. In her deposition, Ms. Vincent readily admitted that the "essential terms" of the conversation were incorporated into her letter. She never testified that the payment represented "full payment" for the contract balance, but rather, to the contrary, i.e., that she understood it to be "the prepayment for the next upcoming quarter". In Ms. Vincent's affidavit in opposition to the motion, prepared in April 1986, almost two years after the conversation, she asserts that "[i]t was [her] understanding as the result of [her] conversation with Mr. Santorelli on September 21, 1984, that * * * by accepting [Becker's] check [for $46,107] and cashing it, [plaintiff] considered the arrangement with Becker terminated without further obligation on the part of either party." This bald, conclusory assertion, which fails to set forth the specifics of the conversation and is thus bereft of any evidentiary worth, does not suggest that the parties considered plaintiff's acceptance of the $46,107 payment to be an accord and satisfaction; at best, it merely establishes Becker's "understanding" that such was the case. It is therefore insufficient to defeat summary judgment. *(See, Thrift Credit Corp. v American Overseas Trading Corp.,* 54 AD2d 994, 995.) Thus, while the majority concludes that extrinsic evidence must be examined to determine whether the parties intended to enter into an accord and that there are triable issues of fact "dependent upon a determination as to the credibility and intent of the parties", under Becker's "best case" version of the facts, credibility and intent never even come into question.

The IAS court similarly erred in its analysis of plaintiff's October 3, 1984 letter as an attempt at a "reservation of

rights" under section 1-207 of the Uniform Commercial Code. Applying the line of cases holding that a reservation of rights not preceding or accompanying the check is untimely and ineffective, the court found the letter "insufficient to conclusively negate defendant's defense of accord and satisfaction." Since, however, neither the check nor the letter tendered by Becker contained an express notification that negotiation of the check would constitute an accord (cf., Horn Waterproofing Corp. v Bushwick Iron & Steel Co., 66 NY2d 321; Pandick, Inc. v Sandusky Plastics, 160 AD2d 236), the Uniform Commercial Code § 1-207 requirement of an explicit reservation of rights was never triggered. In any event, the letter did not purport to reserve plaintiff's right to demand the contract balance; it merely rejected Becker's attempted termination of the contract for cause.

With the defense of accord and satisfaction stricken from the pleadings, this case may proceed to a trial of the relevant issues, including whether Becker's termination of the contract for the reason stated may be justified as a cancellation for cause.