■ Roscoe Macon, Plaintiff, v Arnlie Realty Co. et al., Defendants, et al., Third-Party Plaintiff, et al., Third-Party Defendant, et al., Fourth-Party Plaintiffs, et al., Fourth-Party Defendants. G-AN-H Brokerage Co., Inc., Doing Business as Preferred Services Group, Fifth-Party Plaintiff-Appellant, v Mount Vernon Fire Insurance Company, Fifth-Party Defendant-Respondent. [615 NYS2d 28] —Judgment, Supreme Court, Bronx County (Hansel McGee, J.), entered August 9, 1993, which, *inter alia,* granted fifth-party defendant Mount Vernon Fire Insurance Company's ("Mount Vernon") motion for reargument and thereafter granted summary judgment dismissing the fifth-party complaint, unanimously reversed, on the law, without costs, and the fifth-party complaint is reinstated. Appeal from the order, same court and Justice, entered May 11, 1993, is dismissed as subsumed in the appeal from the later judgment.

First-party defendants Arnlie Realty Co. and Arnold Wax allegedly own the building designated as 500 West 110th Street, New York, New York (the "Building") and first-party defendants Paulista Realty Corp. and Shaw Realty Co. are alleged to have connections to each other and the Building as well as to Wax and Arnlie (the foregoing parties are also the fourth-party plaintiffs and will be collectively referred to as the "Arnlie parties"). Fourth-party defendant and fifth-party plaintiff G-AN-H Brokerage Co., Inc., doing business as Preferred Services Group ("G-AN-H"), acted on behalf of the Arnlie parties in acquiring general liability coverage for the Building from non-party Parkingston Associates ("Parkingston"), the agent for fifth-party defendant Mount Vernon.

Mount Vernon originally issued a policy, for a one-year term commencing on July 13, 1986 (Policy No. GLA099075), which was subsequently cancelled due to a clerical error in the policy concerning the premium. As a result, Parkingston returned the policy to Mount Vernon and a second policy was issued (Policy No. GLA098893, the "Policy") with a premium of $47,726, which was purportedly based upon the square footage of the insured building.

After binding coverage, Mount Vernon engaged an independent inspector, Regional Reporting Service ("Regional"), to confirm the square footage and the number of apartments in the Building. Regional subsequently reported that the square footage was greater than that originally relayed to Mount Vernon and, as a result, Mount Vernon, through Parkingston, issued an endorsement, dated September 15, 1986, which

stated that an additional premium of $21,326 was due because of the area increase. The bodily injury and property damage coverage rate schedules remained the same.

Although the original premium of $47,726 was paid in full on or about September 16, 1986, the additional premium was never remitted. After waiting a period of time, Mount Vernon prepared a Notice of Cancellation dated November 10, 1986 which provided for the termination of the Policy to take effect on November 21, 1986 due to the non-payment of the additional premium. Whether or not the Notice was actually mailed by Parkingston, and received by Wax, are strongly contested issues. On January 9, 1987, plaintiff Roscoe Macon was allegedly injured in the elevator motor room of the Building. Thereafter, by check dated January 14, 1987, Parkingston forwarded the unused premium to G-AN-H, which check was negotiated by the payee.

Macon later commenced the underlying personal injury action against Arnlie Realty Co., Arnold Wax and various independent contractors. The third-party action is not material to the within appeal. The fourth-party action, brought by the Arnlie parties, asserts claims against G-AN-H for professional negligence and breach of contract stemming from the alleged lack of insurance coverage. G-AN-H's fifth-party action against Mount Vernon arises from Mount Vernon's failure to cover the Arnlie parties' loss and seeks indemnification and/or contribution from Mount Vernon, as well as a declaration that Mount Vernon has an obligation to defend and indemnify the Arnlie parties. In an amended fourth-party complaint dated February 15, 1991, the Arnlie parties added Mount Vernon as a fourth-party defendant asserting, *inter alia,* breach of contract and wrongful and improper cancellation of the Policy.

After issue was joined on all levels of this action, G-AN-H and the Arnlie parties moved for summary judgment against Mount Vernon, asserting, *inter alia,* that Mount Vernon's Policy remained in full force and effect at the time of Macon's accident because no Notice of Cancellation was ever issued, and that Mount Vernon's attempt to increase the premium more than 60 days after the effective date of coverage was invalid, the foregoing being in violation of various subdivisions of Insurance Law § 3426.

The moving parties relied on the previously held non-party deposition of a Mr. Norman Portnoy, an employee of Parkingston, who testified that he could find no documentary proof that the Notice of Cancellation had been mailed, despite a

company policy which requires such documentation to be stored for five years. The Notice of Cancellation which Mr. Portnoy did produce contained a blank certificate of mailing.

In opposition, Mount Vernon produced a copy of the Notice of Cancellation with a completed certification of mailing, signed by a Ms. June Nolan, an employee of Parkingston. It is never explained why Mount Vernon had a separate, completed certificate of mailing or how it was obtained. Ms. Nolan also submitted an affidavit in opposition to the motions in which she describes a general office policy of certified or registered mailing of cancellation notices. Conspicuous by its absence, however, is an assertion that she recalled mailing the Notice in question or had anything directly to do with its mailing. Ms. Nolan also agreed with Mr. Portnoy that there was no other proof that the mailing occurred.

By decision and order entered July 15, 1992, the IAS Court denied the summary judgment motions and, in addition to rejecting the majority of the moving parties' arguments pursuant to Insurance Law § 3426, held that the propriety of the mailing of the Notice of Cancellation had not been established by Mount Vernon. Mount Vernon moved for reargument, stressing Ms. Nolan's affidavit and G-AN-H cross-moved to reargue its summary judgment motion. In the order and judgment appealed from, Justice McGee granted Mount Vernon's motion for reargument and denied G-AN-H's cross-motion. The IAS Court held that Ms. Nolan's affidavit sufficiently indicated that she had indeed mailed the notice, and, as a result, granted summary judgment in favor of Mount Vernon. This was error.

Although G-AN-H cannot appeal from a judgment denying its cross-motion to reargue its original request for summary judgment (see, Pan World Constr. Corp. v 791 Park Ave. Corp., 185 AD2d 105, 107, lv dismissed and denied 80 NY2d 1005; Silverstein v Silverstein, 130 AD2d 369), this Court may entertain G-AN-H's appeal from that branch of the judgment which granted Mount Vernon's motion for reargument and thereafter granted Mount Vernon summary judgment.

In the first instance, Mount Vernon's assertion that G-AN-H lacks standing to assert claims based on alleged deficiencies in the Notice of Cancellation is without merit as a broker who negligently fails to procure coverage stands in the shoes of the insurer as concerns liability to the insured (see, Rodriguez v Investors Ins. Co., 201 AD2d 355, 356; Andriaccio v Borg & Borg, 198 AD2d 253; Island Cycle Sales v Khlopin, 126 AD2d 516, 518).

Nor are we persuaded by Mount Vernon's argument that the fifth-party action is barred by laches. A claim of laches requires a showing of unreasonable and inexcusable delay by plaintiff resulting in prejudice to the defendant *(see, Cooper v Drobenko Bros. Realty,* 200 AD2d 415; *Hay Group v Nadel,* 170 AD2d 398, 399). Delay alone, without prejudice, will not suffice *(see, Mauss v Mauss,* 203 AD2d 101; *Foley Mach. Co. v Amaco Constr. Corp.,* 126 AD2d 603, 604). In light of the foregoing, we find that Mount Vernon's blanket statement that it "has all the classic delay problems to deal with", without more, is insufficient to demonstrate actual prejudice.

Mount Vernon's contention that G-AN-H's negotiation of the check for the unused premium after the incident constitutes an accord and satisfaction is unavailing as there was no unequivocal expression by Mount Vernon that it was tendering the payment in full satisfaction of an unliquidated or outstanding debt arising out of the contract *(see, Merrill Lynch Realty/Carll Burr, Inc. v Skinner,* 63 NY2d 590; *Complete Messenger & Trucking Corp. v Merrill Lynch Money Mkts.,* 169 AD2d 609).

Mount Vernon's assertion that it is entitled to summary judgment because it did not receive timely notice of the insured event is likewise rejected. In its letter of disclaimer of coverage dated March 29, 1988, Mount Vernon did not mention G-AN-H's alleged lack of timely notice and it is, therefore, now estopped from raising that as a basis for disclaimer *(see, General Acc. Ins. Group v Cirucci,* 46 NY2d 862; *United States Liab. Ins. Co. v Young,* 186 AD2d 644, *lv denied* 81 NY2d 711; *Fabian v MVAIC,* 111 AD2d 366).

Lastly, in the absence of actual proof of mailing, we find that an issue of fact exists as to whether the Notice of Cancellation was mailed by Parkingston. Mr. Portnoy's and Ms. Nolan's conclusory, vague and often ambiguous statements are insufficient to establish a standard office procedure in adequate detail to warrant the drastic remedy of summary judgment *(see, L.Z.R. Raphaely Galleries v Lumbermens Mut. Cas. Co.,* 191 AD2d 680; *Sea Ins. Co. v Kopsky,* 137 AD2d 804).

We have considered the parties' remaining arguments and find them to be without merit. Concur—Carro, J. P., Rosenberger, Wallach, Kupferman and Tom, JJ.