Willem OOST–LIEVENSE, Plaintiff,

v.

NORTH AMERICAN CONSORTIUM, P.C., North American Partners, L.P., and Sohrab Vahabzadeh, Defendants.

No. 95 Civ. 0559(HB).

United States District Court,
S.D. New York.

July 2, 1997.

Eric William Berry, New York City, for plaintiff.

Steven D. Skolnik, Cox Buchanan Padmore & Shakarchy, New York City for defendants.

### *OPINION AND ORDER*

BAER, District Judge.

Plaintiff moves for leave to amend his complaint and for partial summary judgment. Defendants cross-move for summary judgment, For the reasons discussed below, plaintiff's motion for leave to amend his complaint is GRANTED, plaintiff's motion for summary judgment is GRANTED in part and DENIED in part, and defendants' motion for summary judgment is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff Willem Oost–Lievense brings this action for breach of an employment agreement and for enforcement of his rights as a third-party beneficiary of a Stock Purchase Agreement ("SPA"). The SPA was entered into between defendants North American Consortium, Inc. ("NACI") and North American Partners, L.P. ("NAP") on the one hand and First Capital Asset Management, Inc. ("FCAM") on the other. Pursuant to the SPA, NACI and NAP were to purchase for $4.5 million 35% of the common stock of a Delaware corporation to be formed as a wholly-owned subsidiary of FCAM ("FCAM–DE"). FCAM–DE was to be composed of certain subsidiaries of FCAM. Defendant Sohrab Vahabzadeh signed the SPA on behalf of both NACI and NAP, and individually.

The SPA was signed on October 8, 1993 and the deal was to close on November 1, 1993. Defendants, however, decided not to go through with the transaction and repudi-

ated the transaction in writing on November 8, 1993. In a related state court action, FCAM sued the three defendants for breach of contract. *See FCAM v. NACI*, Index No. 133996/94 (N.Y.Sup.Ct.) (the "State Court Action"). In a recent ruling on cross-motions for summary judgment, New York State Supreme Court Justice Shainswit granted FCAM's summary judgment motion as against NACI and NAP, but denied summary judgment as to Vahabzadeh, and granted his cross-motion dismissing the complaint against him. *See* Opinion Dated Feb. 27, 1997.

Plaintiff's connection to the above events is as follows. He was employed as chairperson and CEO of ABN AMRO Securities (USA) ("ABN") when he learned of the impending deal. Subsequently, he was offered employment as president and CEO of FCAM–DE in a letter dated September 15, 1993 (the "September Offer"). The September Offer laid out basic terms of employment, including an annual base salary of $235,000, a guaranteed bonus payable at the end of the FCAM's first fiscal year, participation in a profit sharing plan, options to buy company stock and health insurance. The September Offer was on FCAM letterhead and was signed by defendant Vahabzadeh and by Hassan Nemazee, as "Directors" of FCAM–DE. The offer was specifically conditioned on "consummation of the [SPA] and ... execut[ion of] a definitive employment agreement." No such "definitive" agreement was ever reached. There is no dispute, however, that plaintiff resigned from his position at ABN in order to accept employment at FCAM–DE.

Plaintiff's claim of an employment agreement rests not only on the September Offer, but also on the SPA itself. The SPA specifically mentions plaintiff on four occasions and provides that: (1) at Closing, FCAM will deliver to NACI and NAP an executed employment agreement with plaintiff, but the absence of such an agreement will not postpone the Closing, SPA ¶ 1.4(a)(ii); (2) FCAM will negotiate an employment agreement with plaintiff in good faith, such agreement to include the terms set forth in the September Offer, SPA ¶ 4. 1(e); (3) plaintiff, or a representative chosen by defendant Vahabza-

deh, will serve as one of FCAM–DE's Directors, SPA ¶ 5.1(d); and (4) certain stock will be set aside to meet FCAM–DE's obligations under the employment agreement with plaintiff. Finally, plaintiff also relies on a July 20, 1993 letter from NACI to FCAM (the "July letter"), describing the outline of the SPA and referring to the fact that "NAC[I] will encourage [plaintiff] to accept the position of CEO of FCAM[-DE]."

From the above documents, plaintiff has asserted three causes of action: (1) breach of an employment agreement comprised of the July letter, the September Offer and the SPA, (2) enforcement of his rights as a third-party beneficiary of the SPA and (3) breach of an employment agreement reflected in the September Offer. Plaintiff has moved for summary judgment on his second and third claims and to dismiss certain of defendants' affirmative defenses. Plaintiff also moves for leave to file his amended complaint, which differs from the original complaint in that it alleges that defendant Vahabzadeh is vicariously liable for the liabilities of NAP and NACI under various theories. Defendants have cross-moved for summary judgment on all of plaintiff's claims.

## DISCUSSION

### I. Motion to Amend

Fed.R.Civ.P. 15(a) provides that "leave [to amend a complaint] shall be freely given when justice so requires." Though defendants make a general assertion of prejudice in light of the lateness of plaintiff's proposed amendment, they do not identify any particular manner in which they will be prejudiced. Moreover, the vicarious liability theories were pled in the State Court Action and the parties have stipulated that discovery from that action shall be available in this case as well. Defendants therefore cannot claim surprise or prejudice in light of the new theories of liability. Accordingly, plaintiff's motion for leave to amend his complaint is GRANTED.

### II. Collateral Estoppel—Defendants' Affirmative Defenses

Plaintiff argues that defendants are collaterally estopped from asserting their first two affirmative defenses because the

same defenses were asserted—and rejected by the court—in the State Court Action. Defendants fail to address the collateral estoppel argument, stating only that they disagree with the State Court ruling and that they intend to appeal.

Under New York law, the doctrine of issue preclusion only applies if (1) the issue in question was actually and necessarily decided in the prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding.

*Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir.1995). Both of these requirements are present here. The very same affirmative defenses of fraud and breach of warranties were argued to Justice Shainswit and rejected, and there is no assertion that defendants were deprived of a fair opportunity to litigate the issue in the State Court Action. Accordingly, defendants are estopped from asserting their first and second affirmative defenses of from arguing that they did not breach the SPA.[1]

### III.  Enforceable Employment Agreement

Defendants argue that the claims for breach of contract should be dismissed because there was no enforceable employment agreement between defendants and plaintiff. "Under New York law, a contract is unenforceable if the parties did not intend to be bound except by a formal written agreement. This rule holds true even if the parties have orally agreed upon all terms of the proposed contract." *Kaplan v. Vincent,* 937 F.Supp. 307, 312 (S.D.N.Y.1996); *see also Scheck v. Francis,* 26 N.Y.2d 466, 469–70, 311 N.Y.S.2d 841, 260 N.E.2d 493 (1970). In assessing whether the parties intend a formal written agreement to bind them, courts look to the following factors: (1) any expressions of such intent; (2) whether there has been partial performance; (3) whether all terms have been agreed upon leaving nothing else to negotiate; and (4) whether the agreement is of the sort that is usually written. *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 75–76 (2d Cir.1984); *Kaplan,* 937 F.Supp. at 312. "These factors may be shown by oral

testimony or by correspondence or other preliminary or partially complete writings." *Id.* at 313.

■ Here, each of these factors supports the conclusion that the parties did not intend to be bound until a more definitive employment agreement was negotiated and signed. Of particular significance is the fact that the documents on which plaintiff relies specifically contemplate a written agreement. Thus, the SPA speaks of "an executed employment agreement", SPA ¶ 1.4(a)(ii), and requires FCM–DE to "negotiate in good faith a form of employment agreement" with plaintiff, SPA ¶ 4.1(e). Likewise, the September Offer conditions the offer of employment on "executing a more definitive employment agreement." Under these circumstances, no binding agreement can be found, and defendants are entitled to summary judgment dismissing plaintiff's breach of contract claims. *See, e.g., Reprosystem, B.V. v. SCM Corp.,* 727 F.2d 257, 262 (2d Cir.1984) (reference to future "definitive agreement" shows intent not to be bound).

### IV.  Third–Party Beneficiary

■ The parties cross-move for summary judgment on plaintiff's claim for enforcement of his rights as a third-party beneficiary of the SPA. New York has adopted the Restatement (Second) of Contracts ("Restatement") approach in assessing third-party beneficiary claims. *Septembertide Publishing, B.V. v. Stein & Day, Inc.,* 884 F.2d 675, 679 (2d Cir.1989). Restatement § 302 provides that only "intended" beneficiaries have enforceable rights under a contract to which they are not a party. Intended and "incidental" beneficiaries are defined as follows:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . .

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

---

1. Defendant Vahabzadeh is not estopped from arguing that he did not breach the SPA, as the

State Court ruled in his favor on his motion to dismiss.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

(Quoted in *Septembertide,* 884 F.2d at 679). The determination of whether plaintiff was an intended beneficiary of the SPA thus turns on the intent of the parties to that agreement. *Id.* "Although the parties' intention to benefit the third party must be gleaned from the face of the contract, the defendant's obligation need not be explicitly stated in the contract itself." *Cauff, Lippman & Co. v. Apogee Finance Group,* 807 F.Supp. 1007, 1020 (S.D.N.Y.1992). As noted above, plaintiff is specifically mentioned in the SPA on four separate occasions. Such specific reference to plaintiff supports the conclusion that he is an intended beneficiary under the contract. *See id.; Septembertide,* 884 F.2d at 680. Nevertheless, because this determination turns on a question of the parties' intent, the Court is hesitant to grant plaintiff's motion. The resolution of plaintiff's status is, ultimately, a question of fact for the jury to decide.

Defendants argue that Paragraph 8.14 of the SPA precludes a finding of third-party beneficiary status. Paragraph 8.14 provides that *"Except as otherwise expressly set forth in this Agreement,* this Agreement shall not confer any rights or remedies upon any person other than the parties...." SPA ¶ 8.14 (emphasis added). While defendants are correct that an explicit statement in a contract that no other persons are intended beneficiaries of the contract precludes such a finding, *Nepco Forged Products, Inc. v. Consolidated Edison Co.,* 99 A.D.2d 508, 470 N.Y.S.2d 680, 681 (1984), they ignore the limiting language of Paragraph 8.14 which specifically provides for the possibility that the contract does create rights in others. Both plaintiff's and defendants' motions are denied with respect to plaintiff's status as an intended beneficiary of the contract.

## V. Vahabzadeh's Liability

All parties also move for summary judgment with respect to Vahabzadeh's liability as a signatory of the SPA and his vicarious liability for NACI, NAP and FCAM–DE.[2] Plaintiff asserts three bases of liability against Vahabzadeh: (a) liability as a signatory of the SPA; (b) liability based on piercing NACI's corporate veil; and (3) liability as a promoter of NAP.

### A. Signatory Liability

The State Court rejected the argument that Vahabzadeh is liable as a signatory under the SPA and dismissed the claims against him. Justice Shainswit reasoned that Vahabzadeh's signature on the agreement in his individual capacity related only to his personal obligations under the SPA—certain restrictive covenants—and did not constitute liability for breach because he was not defined as a "Buyer". Because plaintiff was not a party to the State Court action, however, this holding is not binding upon him or this Court. *See, e.g., Rice v. Massalone,* 160 A.D.2d 861, 554 N.Y.S.2d 294, 295–96 (1990).

Plaintiff argues that the contract is ambiguous with respect to Vahabzadeh's individual signature and therefore reliance on extrinsic evidence is appropriate. They contend that once the ambiguity is recognized by the Court, the Vahabzadeh deposition testimony may be resorted to and that this testimony must prompt a finding of his personal liability. More specifically, that his signature was intended as a guarantee of NAP and NACI's obligations under the SPA. Defendants argue that the contract is unambiguous; that Justice Shainswit's opinion which holds to that effect was correct and that resort to extrinsic testimony is therefore prohibited. I am unclear as to what the proper considerations and responsibilities are, that flow from the two Vahabzadeh signatures on the SPA and conclude that there is ambiguity and that extrinsic evidence is permissible. *Shann v. Dunk,* 84 F.3d 73, 80 (2d Cir.1996). Further such an ambiguity cannot be re-

---

**2.** Because the only basis of liability asserted against FCAM–DE is predicated on the existence of an enforceable employment agreement, an argument dismissed above, the Court need not address this issue.

solved on the record before me but will depend in large measure on the intent of the parties, and as such constitutes a question of fact for the jury. *See id.* at 81; *Levy v. David C. Gold & Co.,* 141 A.D.2d 511, 529 N.Y.S.2d 133, 134 (1988) (affirming jury finding of personal liability); *cf. Freidus v. Sardelli,* 192 A.D.2d 578, 595 N.Y.S.2d 981, 982 (1993) (reversing dismissal of cause of action based on personal liability). Accordingly, both plaintiff's and defendants' motions for summary judgment on this score are denied, and the issue of Vahabzadeh's liability as a signatory will be left for the jury.

### B. Piercing the Corporate Veil

■ Plaintiff also moves for summary judgment on his claim that Vahabzadeh should be held liable for NACI's breach of the SPA because NACI's corporate veil should be pierced. The veil-piercing issue is to be determined by application of Texas law, where NACI is incorporated. *Kalb, Voorhis & Co. v. American Financial Corp.,* 8 F.3d 130, 132–33 (2d Cir.1993) (applying New York choice-of-law rules).

Plaintiff's contention that the corporate veil should be pierced because of misrepresentations regarding the source of financing for the SPA creates a factual issue. Vahabzadeh's testimony that "North American [NACI] had the money. I meant that my family had the money.... [I]t was a phone call away from me calling my father or my uncle" only indicates that the financing was to come from his family members. It does not negate the thought that it would flow through NACI. Summary judgment on the fraud-based veil piercing claim is thus inappropriate.

■ Similarly, any claim of veil piercing based on an alter ego theory must be left for the jury. "Resolution of the alter ego issue is heavily fact-specific." *United States v. Jon–T Chemicals, Inc.,* 768 F.2d 686, 694 (5th Cir.1985); *see also Atlantic Richfield Co. v. Long Trusts,* 860 S.W.2d 439, 447 (Tex.Ct.App.1993) (alter ego determination is finding of fact). Vahabzadeh's testimony that NACI "manages [his] investments" and that he "use[s] it as an operating company" does not comprise the sort of admission suf-

ficient to sustain a motion for summary judgment on the alter ego claim. *Compare Western Horizontal Drilling, Inc. v. Jonnet Energy Corp.,* 11 F.3d 65, 66 (5th Cir.1994) (affirming summary judgment finding of alter ego liability where defendants admitted corporation was "mere conduit for [their] personal finances and business transactions"). Defendants' motion to dismiss these claims must be denied for the same reasons.

### C. Promoter Liability

■ Plaintiff also moves for summary judgment on his claim that Vahabzadeh is liable for NAP's liabilities under the contract as a promoter of NAP. Plaintiff relies on the rule that "[g]enerally, a promoter who executes a preincorporation contract in the name of a proposed corporation is himself personally liable on the contract unless the parties have otherwise agreed." *Clinton Investors Co. II v. Watkins,* 146 A.D.2d 861, 536 N.Y.S.2d 270, 272 (1989); *see also Universal Indus. Corp. v. Lindstrom,* 92 A.D.2d 150, 459 N.Y.S.2d 492, 494 (1983); Restatement (Second) of Agency § 326. Defendant acknowledges this rule but argues that because the signature line on the SPA specifically states that NAP was "in formation" at the time, the rule is inapplicable and that in any event Vahabzadeh never intended to be personally liable. *See Clinton,* 536 N.Y.S.2d at 272 ("[f]or [defendant] to be relieved of his personal liability it must appear that in dealing with him plaintiff knew it was contracting with an as yet nonexistent principal"). While there is no explicit statement in the SPA relieving Vahabzadeh of promoter liability, such an implicit understanding is not precluded based on the evidence. As the parties' intent is determinative, and their intent is a question of fact, *see Universal Indus.,* 459 N.Y.S.2d at 493 ("[t]here is a triable issue in this case on whether the parties regarded the obligation as a personal one"), summary judgment is denied.

### VI. Affirmative Defenses—Settlement

■ Defendants assert that a $30,000 check sent from Vahabzadeh to plaintiff operated as a waiver and release (third affirmative defense), estoppel (sixth affirmative

defense) or payment (seventh affirmative defense) of plaintiff's claims against Vahabzadeh. Plaintiff has moved to dismiss these affirmative defenses. An accord and satisfaction will only be found where payment has been presented in circumstances leaving no room for a reasonable belief that the payment constitutes only partial satisfaction of a debt. *Odyssey Int'l Ltd. v. Reebok Int'l Ltd.*, 716 F.Supp. 116, 118 (S.D.N.Y.1989). While there is little record evidence to support such an inference here, such a conclusion is for the jury. Accordingly, plaintiff's motion for summary judgment dismissing defendants' third, sixth and seventh affirmative defenses is denied.[3]

## CONCLUSION

For the reasons discussed above, plaintiff's motion for leave to file an amended complaint is GRANTED. Plaintiff's motion for summary judgment is GRANTED with respect to defendants' first, second and fourth affirmative defenses, and DENIED in all other respects. Defendants' motion for summary judgment is GRANTED with respect to the first and third causes of action for breach of an employment agreement, and DENIED in all other respects. Trial is scheduled to commence July 23, 1997 and a joint pre-trial order is due July 14.

**SO ORDERED.**

[3.] As noted above, defendants' first and second affirmative defenses are barred by collateral estoppel. Defendants have not opposed plaintiff's motion to dismiss the fourth affirmative defense, based on the statute of frauds, and that defense is dismissed. Finally, defendants are free to argue at trial that plaintiff has failed to mitigate his damages (the eighth affirmative defense), as the question of damages is for the jury.